## SCHILDER v. GUSIK.

No. 10978.

United States Court of Appeals
Sixth Circuit.

March 20, 1950.

Writ of Certiorari Granted June 5, 1950.

See 70 S.Ct. 1014.

Alan R. Browne, Office of the Judge Advocate General, Washington, D. C., R. J. O'Donnell, and Loren G. Windom, Columbus, Ohio, Reginald C. Miller, Lt. Colonel, Office of Judge Advocate General, Washington, D. C., on the brief, for appellant.

Morris Morgenstern and Bernard B. Direnfeld, Cleveland, Ohio, Morris Mor-

genstern, John Price (Deceased), Bernard B. Direnfeld, Leo Chimo, E. J. Sklenicka, Cleveland, Ohio, John Baker, Columbus, Ohio, Francis Picklow, Anthony Lysowski, Cedric Griffith, and Joseph Horwitz, Cleveland, Ohio, on the brief, for appellee.

Before SIMONS, McALLISTER and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

This is an appeal by the warden of the Federal Reformatory at Chillicothe, Ohio, from an order of discharge in a habeas corpus proceeding releasing the appellee from custody while under sentence of a military court for murder. The appellee Thomas Gusik was, in August, 1947, a member of a Guard Company stationed at or near Tirrenia, Italy. Early in the morning of August 13, two Italian civilians were shot and killed near the wire fence which enclosed the depot along Gusik's guard post. On September 18 Gusik was charged with the murder of these persons in violation of the 92nd Article of War, 10 U.S.C.A. § 1565. Trial was had on these charges before a general court-martial appointed by the Commander of the Port of Leghorn, U. S. Army. There was evidence which, if credited, tended to prove that Gusik had lured certain Italian blackmarketeers with whom he had had contact to his post by a prearranged signal, that he had previously threatened to get even with their leader, that he had permitted them to approach and cut the wire without calling upon them to halt or firing a warning shot, and had fired a burst from his automatic carbine at the wire. Conviction and sentence followed.

The record of the trial was reviewed by the Staff Judge Advocate of the Port of Leghorn, who found the evidence sufficient to sustain the findings and sentence and that the court was legally constituted and had jurisdiction of the accused and the offense charged. The Commander of the Port of Leghorn approved the sentence. The Board of Review in the office of the Judge Advocate General, reviewed the case and likewise found the trial record legally sufficient to support the sentence, the court legally constituted and with jurisdiction.

The Judge Advocate General approved the holding of the Board of Review but recommended to the Secretary of the Army that the sentence be reduced from life imprisonment to 16 years. His recommendation was accepted. Gusik being confined in the Southern District of Ohio, sued out a writ of habeas corpus in the court below and was discharged from custody on the ground that he was deprived of liberty without due process of law because no thorough and impartial pre-trial investigation had been conducted in compliance with Article of War 70, 10 U.S.C.A. § 1542, the trial Judge Advocate failed to call all material witnesses and Gusik was denied the effective assistance of counsel.

The warden appeals, challenges jurisdiction of the district court to grant the writ, contends that pre-trial investigation pursuant to Article of War 70 is not an indispensable prerequisite to Army court-martial jurisdiction, asserts the competency of the defense counsel as evidenced by his law degrees and wide experience in court-martial procedure, denies that there were errors at the trial but contends that if any were made they may not be collaterally attacked by petition for the writ of habeas corpus. The order of discharge is defended by Gusik not only on the grounds relied upon by the district judge but on the ground that the law member of the court-martial was not a member of the Judge Advocate General's Department and because errors at the trial which, separately considered, might not have been prejudicial yet in their cumulative effect constituted denial to Gusik of his constitutional right to due process of law.

For reasons to be presently set forth we find it unnecessary to consider any of the issues above recited. On February 1, 1949, amended Articles of War became effective. 10 U.S.C.A. §§ 1472–1593. Article of War 53 as amended provides that upon application of an accused person upon good cause shown, the Judge Advocate General is authorized "to grant a new trial, or to vacate sentence, restore rights, privileges, and property affected by such sentence, * * *". On March 31, 1949, when the order of release was filed, Article 53 was in effect,

664

and a certificate of the Chief of the New Trials Division in the office of the Judge Advocate General of the Army, discloses that no petition or other application for relief under Article 53 had been received on behalf of Gusik up to the date of certification on January 18, 1950. Article 53 provides for the grant of a new trial or the vacation of a sentence within one year after final disposition of a court-martial case, and in cases involving offenses committed during World War Second, the application may be made within one year after the termination of the war. It is not disputed that the remedy provided by Article 53 was, at the time of the decision below, and still is within permissible time.

[1] Habeas corpus to review the action of another court is in its nature extraordinary. It may not be availed of until other remedies have been exhausted. Goto v. Lane, 265 U.S. 393, 44 S.Ct. 525, 68 L. Ed. 1070; Ex Parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572. It is therefore clear that unless there is validity to one or more of the contentions by which the availability of the new remedy to Gusik is here challenged, the writ of habeas corpus was prematurely filed and improvidently granted.

Gusik contends that by reason of Executive Order Dec. 7, 1948, 10020, making effective the amended Articles of War as of February 1, 1949, to all court-martial processes taken on and after that date, Article 53 has no retroactive effect with respect to a court-martial sentence imposed, reviewed and approved prior to that date. The text of the President's proclamation is, so far as material, printed in the margin.[1] The contention is without merit. Article 53 is a remedial measure. It creates no new offenses, increases no penalties and is not in any respect punitive. It does not, therefore, come within the constitutional condemnation of an *ex post facto* law. It would be an unfortunate result and one clearly not intended, either by amended Articles or the Presidential proclamation, to deny to soldiers convicted before their effective date, while granting to others a review now deemed necessary to protect them against erroneous convictions.

Rather is it a more salutary principle that now governs this situation. Since the decision in Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327, there is no longer doubt that the law to be applied by a reviewing court is the law in force when decision is made and not the law as it existed at the time of the trial and judgment. It is a principle that evolves from the earlier case of U. S. v. Schooner Peggy, 1 Cranch 103, 2 L.Ed. 49, and has now been applied by the Courts of Appeal in many cases. Specifically it has been applied by the Fifth Circuit to cases involving convicted soldiers in Whelchel v. McDonald, 176 F.2d 260, and by the Tenth Circuit in McMahan v. Hunter, Warden, 179 F.2d 661 and Simmons v. Hunter, Warden, 179 F.2d 664 and Hunter v. Beets, 180 F.2d 101. Much is made by the appellee of Hiatt v. Brown, 5 Cir., 175 F.2d 273 now reversed by the United States Supreme Court 18 L.W. 4187. It does not appear that Article 53 was brought to the attention of the court or was by it in that case considered, and within the last few weeks the Fifth Court of Appeals, notwithstanding the Brown case, has reversed three orders releasing prisoners on writs of habeas corpus, upon the authority

1. "This manual shall be in force and effect in the Army of the United States on and after February 1, 1949, with respect to all court-martial processes taken on or after February 1, 1949: *Provided*, that nothing contained in this manual shall be construed to invalidate any investigation, trial in which arraignment has been had, or other action begun prior to February 1, 1949; and any such investigation, trial, or action so begun may be completed in accordance with the provisions of the Manual for Courts-Martial, 1928: *Provided further*, that nothing contained in this manual shall be construed to make punishable any act done or omitted prior to the effective date of this manual which was not punishable when done or omitted: *And provided further*, that the maximum punishment for an offense committed prior to February 1, 1949, shall not exceed the applicable limit in effect at the time of the commission of such offense."

of Whelchel v. McDonald, supra, namely, Hiatt v. Birchfield, 179 F.2d 679; Hiatt v. Fugate, 179 F.2d 679 and Hiatt v. Jackson, 179 F.2d 680. But more important still is the blanket order of the Supreme Court entered on October 10, 1949, Walker v. Ragen, 338 U.S. 833, 70 S.Ct. 37, denying to prisoners confined in Illinois penitentiaries, writs of certiorari to review decisions on habeas corpus because of an enactment by the Illinois legislature providing a new remedy for persons who assert rights guaranteed them by the Constitution of the United States. See Jenner, the Illinois Post Conviction Hearing Act, Vol. 9, Federal Rules Decisions, 347-454.

■■ Another contention of the appellee is that because Article 53 provides that action taken thereunder upon application for a new trial or vacation of sentence is expressly made binding on all of the courts of the United States, the remedy provided by that Article is available to Gusik only upon condition that he surrender his right to challenge the jurisdiction of the military court and his deprivation of constitutional rights by applying for a writ of habeas corpus. This provision, he says, is unconstitutional and he should not be compelled to avail himself of an unconstitutional process. The Tenth Court of Appeals disposes of a similar contention in McMahan v. Hunter, supra, by the observation that it will be time enough to answer the question of finality when it is necessarily involved in an appeal before the court. It seems to us, however, that we meet one aspect of that question now, for it would seem unsound to relegate the appellee to an application for review under Article 53 at the hazard of surrendering important constitutional rights if such hazard exists. Whether the finality provision, literally read, is constitutional or not, we need not decide, for applying the principle of decision so often availed of, that an issue of constitutionality will not be considered if an act may reasonably be so read that constitutional validity appears, it would seem that all that is meant by the finality provision in Article 53 is that decision upon the merits is final and does not go to those contentions which attack decision collaterally.

So read the finality created by Article 53 differs in no wise from the finality, in the absence of or after futile appeal, accorded to trial decisions upon consideration of a writ of habeas corpus.

■ Finally, the appellee urges that we may not consider the question of exhaustion of remedies because that issue was not raised either in the pleadings or upon hearing below. We reject the argument. Exhaustion of remedies, while not precisely jurisdictional to the consideration of a petition for habeas corpus, nevertheless involves a concept of broad judicial policy stemming from the concern of federal courts to preserve the delicate balance of authority between the state and federal judiciary, between courts and administrative agencies, and between civil and military courts. So viewing it we think reviewing courts are required to apply the doctrine of exhaustion of remedies whether an issue in respect to it was raised below or not. Only so may there be consistency of decision and the balance of authority maintained.

■ Without prejudice to the rights of the appellee to file a new application for a writ of habeas corpus after having applied for the remedy created by amended Article of War 53, the decision below is

Reversed.