GUSIK *v.* SCHILDER, WARDEN.

No. 110.   Argued November 10, 1950.—Decided December 4, 1950.

*Morris Morgenstern* argued the cause for petitioner. With him on the brief were *Bernard B. Direnfeld, Leo Chimo, Francis Picklow, Marvin L. Shaw* and *Cedric Griffith.*

*John F. Davis* argued the cause for respondent. With him on the brief were *Solicitor General Perlman, Assistant Attorney General McInerney, Robert S. Erdahl* and *Irving S. Shapiro.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This is a petition for a writ of habeas corpus filed in the District Court on behalf of petitioner challenging the legality of his detention by respondent. Respondent holds Gusik pursuant to a court-martial judgment convicting him of murder while he was stationed in Italy as a member of the United States Army. After conviction by the court-martial petitioner exhausted all his remedies for reversal or modification of the judgment of conviction which then existed under the Articles of War. When he secured no relief from the military authorities he filed this petition in which he challenges the jurisdiction of the court-martial both under the Articles of War and the Constitution. The District Court, after a hearing, sustained the writ and released Gusik on bond. It found that the court-martial did not have jurisdiction, because no thorough and impartial pretrial investigation was conducted in compliance with Article 70 of the Articles of War, because the Trial Judge Advocate failed to call material witnesses, and because Gusik was denied the effective assistance of counsel. The Court of Appeals reversed, 180 F. 2d 662. It did not reach the merits of

the case; it held that there was an administrative remedy which petitioner had not exhausted and that the petition must be dismissed without prejudice to the filing of a new petition after resort to the additional administrative remedy had been made.

The new remedy is Article 53 of the Articles of War, 62 Stat. 639, 10 U. S. C. (Supp. III) § 1525.[1] It gives the Judge Advocate General discretion, *inter alia,* to grant a new trial in any court-martial case. Time limitations are specified; and "with regard to cases involving offenses committed during World War II, the application for a new trial may be made within one year after termination of the war, or after its final disposition upon initial appellate review as herein provided, whichever is the later." Peti-

---

[1] Article 53 reads as follows:

"Under such regulations as the President may prescribe, the Judge Advocate General is authorized, upon application of an accused person, and upon good cause shown, in his discretion to grant a new trial, or to vacate a sentence, restore rights, privileges, and property affected by such sentence, and substitute for a dismissal, dishonorable discharge, or bad conduct discharge previously executed a form of discharge authorized for administrative issuance, in any court-martial case in which application is made within one year after final disposition of the case upon initial appellate review: *Provided,* That with regard to cases involving offenses committed during World War II, the application for a new trial may be made within one year after termination of the war, or after its final disposition upon initial appellate review as herein provided, whichever is the later: *Provided,* That only one such application for a new trial may be entertained with regard to any one case: *And provided further,* That all action by the Judge Advocate General pursuant to this article, and all proceedings, findings, and sentences on new trials under this article, as approved, reviewed, or confirmed under articles 47, 48, 49, and 50, and all dismissals and discharges carried into execution pursuant to sentences adjudged on new trials and approved, reviewed, or confirmed, shall be final and conclusive and orders publishing the action of the Judge Advocate General or the proceedings on new trial and all action taken pursuant to such proceedings, shall be binding upon all departments, courts, agencies, and officers of the United States."

tioner argues that Article 53 is not applicable to World War II court-martial cases in which appellate review was completed prior to the effective date of the Article or in which habeas corpus proceedings had been instituted prior to that date. That construction of the Act would require extensive tailoring of the language of Article 53, since the new Article explicitly applies to "cases involving offenses committed during World War II" without reference to the stage in which the cases may be on the effective date of the Article. Our conclusion is in harmony with the construction which the President, who is authorized to provide the regulations under Article 53, gave to the statutory language in Executive Order 10020 which promulgated the Manual for Courts-Martial.[2] That Order states that the new Manual shall be in force and effect on and after February 1, 1949, "with respect to all court-martial processes taken on or after February 1, 1949." A petition for a new trial under Article 53 is such a process.

If Article 53 had been in force when the habeas corpus proceedings were instituted, the District Court would not have been justified in entertaining the petition unless the remedy afforded by the Article had first been exhausted. An analogy is a petition for habeas corpus in the federal court challenging the jurisdiction of a state court. If the state procedure provides a remedy, which though available has not been exhausted, the federal courts will not interfere. That is not only the holding of the Court in a long line of cases (see *Mooney* v. *Holohan,* 294 U. S. 103, 115; *Ex parte Hawk,* 321 U. S. 114, 116); it is the rule which Congress recently wrote into the Judicial Code. 28 U. S. C. § 2254. The policy underlying that rule is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state

---

[2] 13 Fed. Reg. 7519. And see c. 22 Manual for Courts-Martial, *id.* at 7550.

courts. If an available procedure has not been employed to rectify the alleged error which the federal court is asked to correct, any interference by the federal court may be wholly needless. The procedure established to police the errors of the tribunal whose judgment is challenged may be adequate for the occasion. If it is, any friction between the federal court and the military or state tribunal is saved. That policy is as well served whether the remedy which is available was existent at the time resort was had to the federal courts or was subsequently created, as indeed is implicit in cases from a state court whose review we denied pending exhaustion of a newly created state remedy. See *Walker* v. *Ragen,* 338 U. S. 833; *Marks* v. *Ragen,* 339 U. S. 926. Such a principle of judicial administration is in no sense a suspension of the writ of habeas corpus. It is merely a deferment of resort to the writ until other corrective procedures are shown to be futile.

An argument is woven around the finality clause of Article 53 as a foundation to a claim of unconstitutionality. The provision is that all action by the Judge Advocate General under Article 53 shall be "final and conclusive" and shall be "binding upon all departments, courts, agencies, and officers of the United States." It is argued that this clause deprives the courts of jurisdiction to review these military judgments and therefore amounts to a suspension of the writ. We do not so read Article 53. Congress was legislating as respects tribunals over which the civil courts have traditionally exercised no power of supervision or review. See *In re Grimley,* 137 U. S. 147, 150. These tribunals have operated in a self-sufficient system, save only as habeas corpus was available to test their jurisdiction in specific cases. We read the finality clause of Article 53 as doing no more than describing the terminal point for proceedings within the court-martial system. If Congress had intended to deprive the civil courts of their habeas corpus jurisdiction, which has been

exercised from the beginning,[3] the break with history would have been so marked that we believe the purpose would have been made plain and unmistakable. The finality language so adequately serves the more restricted purpose that we would have to give a strained construction in order to stir the constitutional issue that is tendered.

Petitioner says that resort to Article 53 will be futile. If it proves to be, no rights have been sacrificed. Habeas corpus will then be available to test any questions of jurisdiction which petitioner may offer.

Trial of the case in the District Court had ended before the effective date of Article 53 and the question of the exhaustion of the new remedy which the Article affords was not raised until the case was in the Court of Appeals.[4] We conclude that in the interests of justice the Court of Appeals, instead of reversing the District Court and ordering the petition to be dismissed, should have done what the Court of Appeals in *Whelchel* v. *McDonald, ante,* p. 122, did under like circumstances and held the case pending resort to the new remedy under Article 53. If relief is obtained from the Judge Advocate General, the case

---

[3] Collateral attack of a judgment of a court-martial was early entertained. *Wise* v. *Withers,* 3 Cranch 331, was an action in trespass against one who justified the taking as collector of a fine imposed by a court-martial. The Court, speaking through Marshall, C. J., held that since the court-martial acted without its jurisdiction the court and the officers were trespassers. And see *Houston* v. *Moore,* 5 Wheat. 1 (trespass); *Martin* v. *Mott,* 12 Wheat. 19 (replevin); *Dynes* v. *Hoover,* 20 How. 65 (assault, battery, and false imprisonment). *Ex parte Reed,* 100 U. S. 13, allowed habeas corpus to test the jurisdiction of a court-martial.

[4] The petition for habeas corpus was filed April 27, 1948; the return was filed June 17, 1948; the parties finished introducing evidence on January 7, 1949; Article 53 became effective February 1, 1949; the District Court filed its opinion on March 31, 1949; notice of appeal was filed May 17, 1949; the case was argued in the Court of Appeals on January 31, 1950.

will then be remanded for dismissal. If the relief is not obtained under Article 53, petitioner will not be put to the time and expense of trying anew the case which he tried when he had no relief other than habeas corpus.

We agree with the Court of Appeals on the main issue tendered under Article 53. But since we think a different disposition of the case should be made pending resort to the new remedy which Article 53 affords, we reverse the judgment below and remand the cause to the Court of Appeals for further proceedings in conformity with this opinion.

*So ordered.*