UNITED STATES ex rel. TOMBACK v. BULLOCK.

No. 52 C 2567.

United States District Court
N. D. Illinois, E. D.

March 3, 1953.

5. Fed.Rules Civ.Proc. rule 52(a), 28 U. S.C.A.

Jesse Marcus, Chicago, Ill., for petitioner.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., for respondent.

CAMPBELL, District Judge.

Petitioner alleges that he was unlawfully inducted into the Army of the United States, and that he is now unlawfully restrained of his liberty by respondent, the Commanding Officer of Fort Sheridan, Illinois. He seeks release through a writ of habeas corpus. The parties stipulated that the facts contained in petitioner's Selective Service System file are true, and the cause was taken under advisement by the court.

## I. Findings of Fact

The following sequence of events is disclosed by documents contained in the files of the Selective Service System:

1. On December 28, 1950, petitioner answered and signed a Selective Service Classification Questionnaire (Form 100), wherein he stated that he had never been married, and that no persons were wholly or partially dependent upon him for support.

He further stated that he had been treated by physicians for a "nervous and anemia condition," and for a condition of "palpitation—hot flushes."

2. On January 5, 1951, petitioner submitted to his Local Board a sworn statement from a physician, who wrote that petitioner "has considerable vasomotor instability as evidenced by palpitation, hot flushes of face and neck accompanied by general weakness. He, also, has a slight anemia."

3. On March 22, 1951, petitioner was placed in classification 1–A.

4. On December 3, 1951, petitioner was ordered by Local Board 59 to report for an armed forces physical examination on December 11, 1951.

5. On December 6, 1951, petitioner's mother submitted a sworn statement from a physician to the Local Board. The physician described defects in petitioner's vision, and stated: "I do not recommend military duty for this patient."

6. On December 11, 1951, petitioner reported for the armed forces physical examination. The examiners concluded that petitioner was qualified for military service.

7. On December 13, 1951, petitioner submitted a sworn statement from another physician, who wrote that petitioner "is an extremely nervous individual, that all of his complaints such as flushes and migraine headaches are all due to an extreme psychoneurotic tendency."

8. On May 29, 1952, petitioner informed the Local Board that he had recently been married.

9. On August 29, 1952, the Local Board ordered petitioner to report for induction on September 15, 1952.

10. On September 2, 1952, petitioner wrote to his Local Board:

"I am in receipt today of a draft induction notice for September 15, 1952. This notice came to me at a time when I was about to write to you to inform you of my wife's pregnant condition.

"I first found out about this condition when she was examined by a physician on Friday evening, August 29, 1952.

\*　　\*　　\*　　\*　　\*　　\*

"I am writing this letter to appeal this induction notice and to request a 3F classification for this reason.

"Perhaps technically an induction notice is the final word but I could not communicate with you any sooner after I discovered my wife's condition.

"I beg of you gentlemen to reconsider my case. I shall be happy to present you with the physician's statement at any time you request."

11. On September 5, and again on September 8, 1952, petitioner submitted statements from a physician attesting to the pregnancy of petitioner's wife.

12. On September 4, 1952, petitioner's father wrote to the Local Board, stating, in essence, that he would be unable to care for petitioner's wife if petitioner were inducted, and that petitioner's mother was not in good health. On the same date, petitioner's father-in-law wrote to the Local Board, stating that he was in poor health, and that he would be unable to care for petitioner's wife if petitioner were inducted.

13. On September 11, 1952, the Local Board recommended "that permission be granted from State Director to reopen this case in order to fully consider conflicting evidence of wife [sic] pregnancy in order that injustice may not be rendered to registrant," and on September 12, 1952, the Local Board transmitted petitioner's file to the State Director of Selective Service at Chicago, Illinois. On the latter date, the time for petitioner's induction into the armed forces was postponed until October 13, 1952.

14. On September 19, 1952, and on a subsequent date, the Local Board, acting under the direction of the State Director, requested petitioner and his near relatives to submit "Statements of Dependency," together with affidavits from persons who were familiar with petitioner's financial situation. Petitioner submitted the requested statements and affidavits shortly thereafter.

15. On October 3, 1952, all such statements and affidavits together with petitioner's complete Selective Service file, were sent by the Local Board to the State Director.

16. On October 16, 1952, the State Director returned the file to the Local Board, and stated:

"After reviewing this file  *  *  * it is the decision of this Headquarters that the local board's request to reopen this case be denied.

"There is no conclusive evidence presented that extreme hardship and privation would occur through the registrant's induction, and in view of the dependency allotment available the local board will include this subject on their first induction call after 31 October 1952."

17. On November 12, 1952, petitioner was ordered to report for induction on November 28, 1952. Petitioner was inducted into the Army on that date.

## II. The Petition

From this series of stipulated facts, petitioner has extracted certain events which he urges are material to the validity of his induction. The petition recites these events, and alleges that, when considered with certain regulations of the Selective Service System, they show a violation of procedural and substantive rights guaranteed to petitioner by the Fifth Amendment to the Constitution.

The petition alleges that petitioner was married on May 8, 1952, subsequent to his classification in Class 1–A by the Local Board, and that he notified the Local Board of his marriage on May 27, 1952; that from the date of his marriage to the date of his induction, petitioner maintained a bona fide family relationship with his wife; that on September 5, 1952, a physician found his wife to be pregnant, and that, on that date, the physician issued a certificate to that effect; and that on August 29, 1952, the Local Board mailed a notice of induction to petitioner.

The petition then recites Selective Service Regulation 1625.3, which states:

"(a) The local board shall reopen and consider anew the classification of a registrant upon the written request of the State Director of Selective Service or the Director of Selective Service and upon receipt of such request shall

immediately cancel any Order to Report for Induction (SSS Form No. 252) which may have been issued to the registrant."

The petition next alleges that "on September 11, 1952 on the written direction of the said Director of Selective Service System of the State of Illinois the said Local Board reopened the classification of the petitioner herein."

The petition then recites Selective Service Regulation 1625.14, which provides:

"When the local board has reopened the classification of a registrant, it shall cancel any Order to Report for Induction (SSS Form. No. 252) which may have been issued to the registrant. If, after the registrant's classification is reopened, he is classified anew into a class available for service, he shall be ordered to report for induction in the usual manner."

It is then alleged that "by reason of the reopening of the petitioner's classification on September 11, 1952," the order of induction issued in August, 1952, was canceled and void.

In short, petitioner claims that his classification was reopened by the Local Board in September, 1952, and that after such reopening, his induction order was not canceled and he was not reclassified, as required by the Regulations of the Selective Service System. On the basis of this claim, petitioner asks that a writ of habeas corpus be issued, directing his discharge from the custody of the Armed Forces of the United States.

### III.  Administrative Remedies.

Petitioner concedes that he has not exhausted a remedy provided by Army Regulations. The petition itself recites that:

"Petitioner is aware that he may be provided with an opportunity through army channels to protect (sic) his wrongful induction; that said procedure involves the forwarding through his Commanding Officer to Washington, the facts in his case after which they will be referred to the Local Board, that in petitioner's case such procedure in any event will be fruitless in view of the interpretation placed by the Local Board upon the regulations referred to herein."

The "opportunity" to which petitioner refers is Army Regulation 615–365 (32 C.F.R. 582.3), which provides:

"(b)  *  *  *  The Secretary of the Army has delegated to commanders the authority to order enlisted personnel discharged or released from active duty for the convenience of the Government for the following reasons:

"(1) To dispose of cases involving an individual's claim that prior to induction he was denied a procedural right as provided by the Selective Service Act of 1948 and was, therefore, erroneously inducted. All requests for discharge under this provision will be forwarded to the officer exercising discharge authority and by him to the State director of the selective service system  *  *  *  for his recommendation. The officer exercising discharge authority will discharge the individual or retain him in the service in accordance with the recommendation.  *  * "

The Regulation has been amended from time to time, but the amendments are not now material; the substantive provisions of the regulation have not been altered.

It is well settled that habeas corpus is an extraordinary writ, and that it may not be issued until all other means of relief have been exhausted. The courts of this Circuit have often held, for example, that an inmate of a state penal institution must exhaust every available state remedy before a federal district court may entertain his petition for habeas corpus. The Court of Appeals has also held that a member of the armed forces under sentence of court martial must exhaust all remedies provided in the Articles of War prior to seeking relief in the federal courts. United States ex rel. Giese v. Chamberlin, 7 Cir., 1950, 184 F.2d 404. The same result was reached in Gusik v. Schilder, 1950, 340 U.S. 128, 71 S.Ct. 149, 151, 95 L.Ed. 146, wherein the Supreme Court commented:

"If an available procedure has not been employed to rectify the alleged error which the federal court is asked to correct, any interference by the federal court may be wholly needless. The procedure established to police the errors of the tribunal whose judgment is challenged may be adequate for the occasion. If it is, any friction between the federal court and the military or state tribunal is saved. * * * Such a principle of judicial administration is in no sense a suspension of the writ of habeas corpus. It is merely a deferment of resort to the writ until other corrective procedures are shown to be futile."

Ordinarily, then, this court would be compelled to dismiss the petition of an inductee who had not yet pursued a remedy provided by Army Regulations.

■ However, the facts of this case, as revealed in petitioner's Selective Service System file, demonstrate that it would be useless to require petitioner to pursue the remedy provided in the above-quoted Army Regulation. That regulation requires the Army to forward petitioner's request for discharge to the State Director of Selective Service "for his recommendation." And, the regulation states, "The officer exercising discharge authority will discharge the individual or retain him in the service in accordance with the recommendation." Petitioner's file indicates that the State Director has already reviewed this case, and that the review was thorough and deliberate. The State Director has finally denied the Local Board's request to reopen petitioner's classification. Under these circumstances, this court will not compel petitioner to pursue a remedy which can do no more than bring his file before the State Director once again.

The court wishes to make clear, however, that in assuming jurisdiction of this cause, it does not depart from the principles announced in Gusik v. Schilder, supra, or United States ex rel. Giese v. Chamberlin, supra. Moreover, the court does not hold that all inductees may short-cut the remedy provided by Army regulation; the court

merely holds that the peculiar facts of the instant case indicate that petitioner has already traveled any avenue which could be opened by the regulation.

## IV. Judicial Review.

Section 10(b) (3) of the Universal Military Training and Service Act, 50 U.S.C.A. Appendix § 460(b) (3), provides for the creation of civilian local boards within the Selective Service System. That Section states that decisions of local boards with respect to exemptions or deferments from military service "shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe." The Section further provides for the creation of civilian appeal boards, and states that the decisions of such boards "shall be final * * * unless modified or changed by the President."

In Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, the Court construed certain sections of the Selective Training and Service Act of 1940 which are substantially similar to Section 460(b) (3), supra. The Court held, 327 U.S. at page 122, 66 S.Ct. at page 427:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

Many cases have followed Estep, and the scope of judicial review announced therein has not been enlarged. In Cox v. United States, 1947, 332 U.S. 442, 453, 68 S.Ct. 115, 120, 92 L.Ed. 59, for example, the Court held that "when a court finds a basis in the file for the board's action that action

is conclusive. The question of the preponderance of evidence is not for trial anew."

This court is therefore restricted to a determination of two issues: (1) whether or not there is a basis in petitioner's Selective Service System file to support his classification by the Local Board in Class 1–A; and (2) whether or not the Local Board acted in accordance with Selective Service System regulations when it ordered petitioner to report for induction subsequent to said classification.

## V. Validity of the Induction.

A review of the documents contained in petitioner's Selective Service System file, detailed in an earlier part of this memorandum, demonstrates that the Local Board properly classified petitioner in Class 1–A; indeed, petitioner does not and cannot now contend that his first classification was erroneous.

■ Insofar as this petition is concerned, petitioner's objections to the actions of the Local Board date from August 29, 1952, when he was first ordered to report for induction. A few days after that order was issued, petitioner informed his Local Board that his wife was pregnant, and, shortly thereafter, he submitted a physician's certificate attesting to the pregnancy. Selective Service System Regulation 1622.30 provides:

"(a) In Class III–A shall be placed any registrant who has a child or children with whom he maintains a bona fide family relationship in their home.

*     *     *     *     *     *

"(c) (1) The term 'child' as used in this section shall include a legitimate or an illegitimate child from the date of its conception. *  *  *

"(2) No registrant shall be placed in Class III–A because he has a child which is not yet born, *unless prior to the time the local board mails him an order to report for induction,* there is filed with the local board the certificate of a licensed physician stating that the child has been conceived, the probable date of its delivery, and the evidence upon which his positive diagnosis of pregnancy is based." (Italics added.)

Since petitioner did not file with the Local Board a physician's certificate prior to the time he was ordered to report for induction, the Local Board properly refused to change petitioner's classification.

Petitioner contends, however, that the actions of the Local Board in September, 1952, constituted a "reopening" of his classification, and, in view of the alleged reopening, the Local Board was obliged by Regulation to cancel all prior orders to report for induction. It is respondent's position that petitioner's classification was never reopened.

■ The documents in petitioner's file indicate that on September 11, 1952, the Local Board recommended that the State Director of Selective Service grant permission to reopen petitioner's classification. Under the Regulations, the Local Board could have reopened the classification on its own motion; clearly, this was not done. Instead, the Local Board sought the advice of its superior, the State Director. On October 16, 1952, he decided that "the local board's request to reopen this case is denied." It is therefore the opinion of this court that petitioner's classification was not reopened, as that term is used in the Selective Service System Regulations. Regulations 1625.1 et seq. Accordingly, the order to report for induction which was issued prior to the time the State Director entered petitioner's case retained its validity, and petitioner was not entitled to a new hearing and a new classification.

In the opinion of the court, petitioner was treated fairly and properly throughout his association with the Local Board. The contents of petitioner's file, outlined above, consist for the most part of a barrage of letters from physicians and relatives, each claiming that petitioner was not fit for military service. Despite repeated attempts to avoid service, petitioner's case was considered objectively and maturely, both by his Local Board and by the State

Director. The court finds, viewing the file cumulatively, that petitioner was in no way deprived of due process of law.

Petitioner was properly classified in Class 1–A, and was inducted into the Armed Forces pursuant to a valid order to report for induction. The order to show cause heretofore issued is therefore discharged.

The petition is denied.