**PECK v. CARPENTER.**
No. 33462.

United States District Court
N. D. California, S. D.
April 26, 1954.

Gladstein, Andersen & Leonard, Allen Brotsky, San Francisco, Cal., Margolis, McTernan & Branton, Ben Margolis, Los Angeles, Cal., for petitioner.

Lloyd H. Burke, U. S. Atty., Charles E. Collett, Asst. U. S. Atty., San Francisco. Cal., Chester W. Wilson, Lieutenant Colonel, USAF, Washington, D. C., for respondent.

HARRIS, District Judge.

Dr. Peck has filed herein his petition for writ of habeas corpus. An order to show cause issued and the respondent filed his return; the traverse thereto was filed by Dr. Peck.

The hearing on the order to show cause entailed the taking of testimony, as well as the introduction of documentary proof.

The Court finds the following facts, to-wit:

Petitioner, Dr. Robert M. Peck, is a medical doctor duly and regularly admitted to practice medicine in the States of California, Illinois and Kentucky. Petitioner's education for his profession consisted of the following: three years of undergraduate work at University of Southern California, Los Angeles, California; four years of medical school training at the University of Southern California School of Medicine, Los Angeles, California; one year of internship at Los Angeles County General Hospital, Los Angeles, California; eighteen months of residency in internal medicine at the University of Chicago Clinic, Chicago, Illinois. During said training petitioner expended substantial sums for tuition and other necessary expenses incurred in his medical education. As a result of this expenditure of time, energy and funds on the part of petitioner, he became a qualified medical doctor, fully able to administer to the sick and injured, and to render much needed services in the field of medicine.

Prior to his induction petitioner had engaged in the private practice of medicine in Los Angeles, California, for six months. He had left his practice in Los Angeles to join the Black Mountain Clinic at Kenvir, Harlan County, Kentucky, where a critical shortage of doctors existed.

On January 29, 1953, petitioner was inducted as a Basic Trainee Airman in the United States Air Force under and pursuant to the provisions of the Act of September 9, 1950, 50 U.S.C.A.Appendix, § 454(i) (1) providing for the induction of doctors and dentists and other urgently needed allied specialists and commonly known as and hereafter referred to as the Doctors Draft Law.

On orders thereafter given him by the United States Air Force, petitioner was listed as a special registrant under the Doctors Draft Law and as a "qualified physician." On all papers and documents and orders of the United States Air Force relating to or dealing with his qualifications, petitioner at all times since his induction has been shown and listed as a qualified physician and his full qualifications in that regard have never been questioned or challenged by respondent.

At the time of his induction petitioner was, and now is, married. Petitioner is the father of two children, aged three years and one year respectively. Petitioner was inducted while a member of the medical staff of the Black Mountain Clinic hereinbefore referred to.

Prior to his said induction, on or about July 28, 1952, petitioner was tentatively commissioned as a First Lieutenant in the United States Air Force Reserve after due application therefor. Said tentative commission was cancelled on or about September 30, 1952, by reason of the fact that petitioner claimed his constitutional privileges in executing the loyalty certificate required of commissioned officers.

On or about June 29, 1953, the Doctors Draft Law was amended to provide as follows with respect to the granting of commissions to doctors drafted thereunder:

"Notwithstanding subsection 217 (c) of the Armed Forces Reserve Act of 1952 (66 Stat. 481) or any other provision of law, any person liable for induction under the Act of September 9, 1950, as amended, or any member of a reserve component who has been or shall be ordered to active duty on or before July 1, 1955, as a physician, dentist, or in an allied specialist category in the Armed Forces (including the Public Health Service) of the United States shall, under regulations prescribed by the President, be appointed, reappointed, or promoted to such grade or rank as may be commensurate with his professional education, experience, or ability." Public Law 84, 83rd Congress, § 3, 50 U.S.C.A. Appendix, § 454a.

Following the said amendment to the Doctors Draft Law petitioner reapplied for commission in the medical corps of the United States Air Force reserve by application dated August 10, 1953, and again asserted his constitutional privileges with respect to the loyalty certificate required of commissioned officers. Thereafter, on or about October 14, 1953, petitioner's new application for a commission was denied.

Thereafter, on October 27, 1953, petitioner applied for and requested his discharge from the United States Air Force on the ground that his retention in the Armed Force pursuant to the Doctors Draft Law, as amended, without being granted a commission was illegal and without authority. Said request and application for discharge was denied.

After his induction on January 29, 1953, petitioner completed a course of basic training as a Basic Trainee Airman. Petitioner's performance as an airman in basic training was rated excellent.

Thereafter petitioner was assigned on April 6, 1953, to the 3275th Military Training Wing, Parks Air Force Base, California, for duty as a physician in the United States Air Force Hospital, 3275th Medical Corps of said Air Force Base. Petitioner performed his duties following his assignment to the aforesaid 3275th Military Training Wing for the duties described aforesaid in an excellent manner during his entire period of service at Parks Air Force Base.

Respondent William E. Carpenter is a Colonel of the United States Air Force, and as the Commanding Officer of Parks Air Force Base, Alameda County, California, is the person exercising general authority over said base and over the person of petitioner herein.

Petitioner's duties in the United States Air Force are now that of a ward physician at the 3275th United States

Air Force Hospital, Parks Air Force Base. In said position petitioner performs the duties generally performed by commissioned officers generally assigned as ward physicians. Petitioner's present duties include professional services in the medical clinic of said hospital and in the dispensary of said air force base.

The commissioned rank held by other medical doctors assigned to said hospital who are performing substantially the same duties as petitioner and who have commensurate medical education and ability is at least that of First Lieutenant.

Petitioner at all times has been, and now is, fully willing and desirous of serving his country as a medical doctor in the United States Air Force, provided that he is granted a commission. Petitioner seeks his release at this time only because the United States Air Force has refused to utilize him as a medical doctor in the rank of commissioned officer provided for by law. The United States Air Force has declined and now declines and will continuously hereafter decline to commission petitioner in a grade or rank commensurate with his professional education, experience or ability.

## The Applicable Law

Petitioner asserts that under the rule stated in Nelson v. Peckham, 4 Cir., 210 F.2d 574, 578, petitioner is entitled to his immediate release. Respondent asserts that petitioner is entitled to a modified form of release and proposes that petitioner is entitled to be released from the service in accordance with the regulations of the United States Air Force.

This Court has no alternative under the facts and circumstances but to grant the writ. As announced in Nelson v. Peckham, supra, Judge Parker speaking for the 4th Circuit, said as follows:

"A physician or dentist held to service under the [Doctors Draft Law] shall be granted a rank or grade 'commensurate with his professional education, experience, or ability', and * * * this must be construed as a condition of the right

to hold him to service. While the courts cannot direct or control the granting of rank or grade, they can direct that a physician or dentist be released from service when this condition of the law is not complied with. Because of appellant's Communist affiliations, the officials of the Army were acting within the proper scope of their authority in refusing to grant him a commission carrying the rank and grade of an officer; but they could not deny him this rank and grade and at the same time hold him to service under the statute as we think it must be interpreted. If not fit to be an officer, he should be held not fit for the services for which he has been drafted and should be dismissed."

Respondent, citing Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146, contends that until the administrative aspects have been completed, viz., the nature of the discharge of petitioner determined, the petition is premature. This position is entirely without merit. There is no analogy between the Gusik case and the case at bar. In Gusik the remedy was one available to the *accused* by a proceeding before the Judge Advocate General, who, in the exercise of his discretion, might grant a new trial in any court martial case. The proceedings of an administrative nature which are pending and instituted by the Air Force are not designed as a procedural remedy available to petitioner to review his grievances; rather the contemplated proceeding has an avowed purpose contrary to and diametrically opposed to the interest and property rights of petitioner.

The arguments in the main advanced by respondent are centered around a proposition that would result in a *suspension* of the writ of habeas corpus.

The facts do not warrant such suspension and there is no law, so far as this Court can perceive, that would warrant deferring the granting of the writ until some future, undetermined time.

When, as it appears, respondent refused to commission petitioner under

the principles announced by the Nelson case, supra, he was immediately entitled to discharge, and there is no rule, in my opinion, to impinge upon or otherwise erode the plenary power in this Court to exercise its prerogatives in granting the writ.

Accordingly, it is ordered that the Writ of Habeas Corpus be, and the same hereby is, granted, and petitioner be, and he is, released from the custody of the United States Air Force.