**NEARY v. GREENOUGH.**
Civ. A. No. 1064.

United States District Court
D. Maine, S. D.
April 26, 1954.

Charles W. Allen and Vincent L. Mc-Kusick, of Hutchinson, Pierce, Atwood & Scribner, Portand, Me., and Malcolm Mc-Lane, Concord, N. H., for petitioner.

Peter Mills, U. S. Atty., Farmington, Me., and Edward J. Harrigan, Asst. U. S. Atty., Portland, Me., for respondent.

CLIFFORD, District Judge.

This matter comes before this Court upon the application of Jerry D. Neary of Philadelphia, Pennsylvania, for a writ of habeas corpus. He alleges that he is now illegally detained in the United States Marine Corps by color of authority of the United States in the custody and under the command of Lt. Col. K. C. Greenough, U. S. M. C., the Commanding Officer of the Marine Barracks, United States Naval Base, Kittery, Maine.

The material facts of this case are as follows: On June 3, 1952, Jerry D. Neary voluntarily enlisted in the United States Marine Corps and was assigned for recruit training to the Marine Corps Recruit Depot at Parris Island, South Carolina. He was a member of the Fifth Recruit Training Battalion.

While at said base, he appeared before an Aptitude Board for consideration of his suitability for retention in the service. On August 25, 1952, that Board recommended to Major General M. H. Silverthorn, Commanding General of said Recruit Depot, that Neary, along with some sixteen other recruits, should be discharged from service by reason of "unsuitability." A detailed report prepared by the Aptitude Board was forwarded to the Commanding General, together with its recommendation as to each of such recruits recommended for discharge. At the time of his appearance

before the Aptitude Board, Neary was informed by the Board that it was recommending him for discharge under honorable conditions by reason of his "unsuitability."

Approximately 85,000 recruits passed through Parris Island in 1952. Roughly, ten per cent were discharged, a half or about 4,000 for the reason of "unsuitability." As a matter of policy, separation in accordance with the recommendation of the Aptitude Board was to be effected within five days after the receipt by the Commanding General of its report, if he approved of the recommendation.

Under the standard procedure, established by Major General Silverthorn, the full reports of all of the Aptitude Board cases were forwarded by the Board to Colonel A. B. Geiger, the G–1 to the Commanding General at this time. It was his duty to review said reports, initial a carbon copy of each report to indicate that he had reviewed it, and prepare a typewritten endorsement for the Commanding General's signature. If additional information were deemed necessary, Colonel Geiger would attach an informal memorandum to the individual report. After his review, the reports as processed would be forwarded to the Commanding General for final action.

It was brought out at the pre-trial conference of this action that, in order to expedite the separation process, post special orders directing discharges were "cut", listing all of those recommended for discharge by the Aptitude Board, before approval of each report was made by the Commanding General. However, the standard procedure provided that the orders should not be dated or issued until after approval was given.

The regulations under which one may be discharged from the Marine Corps by reason of "unsuitability" are found in the Marine Corps Manual, promulgated April 11, 1949. The pertinent portions of which are as follows:

"10275 Discharged for Reason of Unsuitability

"1. The commandant of the Marine Corps may authorize or direct the discharge for 'unsuitability' of enlisted personnel * * *.

"2. Commanding Officer shall not effect the discharge of enlisted personnel for unsuitability except when specifically authorized by the Commandant of the Marine Corps.

"3. * * *

"4. Special instructions as to the procedure to be followed for the elimination of the unsuited among newly enlisted personnel will be issued to Marine Corps Recruit Depots by the Commandant of the Marine Corps."

The instructions contemplated by paragraph 4, supra, were in effect at the time of the promulgation of the Marine Corps Manual. These instructions were and are contained in a Bureau of Medicine and Surgery, Bureau of Naval Personnel, and Marine Corps joint letter (Bu Med Circular letter No. 49–19, dated February 24, 1949). This letter sets forth the procedure for disposition of recruits considered as unfit or unsuitable for service. The pertinent part of this joint letter is as follows:

"10. (a) The Aptitude Board's report will be reviewed by the * * * Commanding General. If he approves a recommendation for discharge, the recruit concerned will be discharged and the action will be final.

"(b) If the * * * Commanding General disapproves a recommendation for discharge, he will so indicate, by endorsement, and will forward the Board's report via Bu Med to * * * Marine Corps for final action.

"11. * * * (b) The recruit discharged upon the approved recommendation of the Aptitude Board will be discharged by reason of unsuitability * * *."

According to the established procedure, if the Commanding General approved the Aptitude Board's report, a

post special order would be issued directing the discharge of those recruits whose reports had been approved. That order would not be signed personally by the Commanding General, but by either the Post Adjutant or his assistant on behalf of Major General Silverthorn "by direction." However, the approval of the Aptitude Board report by the Commanding General was required before either of these two persons could sign and issue any such order.

On August 28, 1952, Post Special Order No. 354–52 was promulgated over the signature of Lt. J. V. Grace, who was the assistant Post Adjutant and who was, as such, part of the staff of the Commanding General, signing "by direction" of the Commanding General. The order read, "The following discharges are directed", and listed for discharge seventeen men, including Neary, and being the men recommended for discharge for "unsuitability" by the Aptitude Board on August 25, 1952. The effective date of the discharges was set for September 3, 1952.

As for sixteen of the recruits whose names appeared on the August 28th order, there was an endorsement approving the recommendation of the Aptitude Board. These endorsements were signed by Major General Silverthorn on August 26, 1952, and each endorsement was given a serial number running consecutively from 22762 through 22778. The endorsement in regard to Neary, disapproving of the Aptitude Board's recommendation, was given a number in between 22762 and 22778, namely 22776. That endorsement, however, was not signed by the Commanding General until September 3, 1952. Major General Silverthorn denied having approved of the Aptitude Board's recommendation in regard to Neary and later changed his mind by disapproving the recommendation. He stated further that he never approved of the Board's recommendation in this regard.

The order of August 28, 1952, was given distribution "H" pursuant to which 106 copies were distributed among a substantial list of officers who would process the men involved for discharge. Such distribution included the Assistant G–1. There was no reason for any officer, who received and acted upon said order in discharging Neary, to question the validity and legal effectiveness of it.

The distribution of the endorsements approving the Aptitude Board's recommendation was different from that of the August 28th order. The only officer receiving a copy of both documents was the Post Surgeon.

On August 29 and 30, 1952, there was an exchange of inter-office memoranda between Colonel Geiger and Major General Silverthorn. The first memorandum from Colonel Geiger to the Commanding General read as follows:

"Office Memorandum
            United States Government
            "Date: 29 Aug.             .
"To:  C. G.
"From:  G–1
"Subj:

    "This is a case of the 'unwilling soldier.' This boy's trouble seems to be no discipline in past, and no intention of submitting to it in the future.

    "If he is discharged he gets a general discharge under 'Honorable conditions' and $100 discharge bonus. I can't see it. I am in favor of returning him to duty, and let nature take its course. Either he is straightened out, or he winds up with a BCD and *no* bonus.
                        "Respectfully,
                "/S/  A. B. G."

Major General Silverthorn replied as follows:

    "The Commanding General
    "Marine Corps Recruit Depot
    "Parris Island, South Carolina.
                            "30 Aug.
"To:  G–1
    Concur w/your memo of 29 Aug Rec of Apt. Bd. is disapproved. Please have appropriate ind. prepared.
                "/S/  M. H. S."

This Court finds as a fact that these memoranda related to Neary and not to some other recruit. From what appears on the record, Colonel Geiger and Major General Silverthorn were the only two officers who knew of these memoranda. The Commanding General's decision to disapprove the recommendation of the Aptitude Board in regard to Neary was not brought to the attention of those officers who were relying and acting upon the August 28th order directing the discharge of Neary.

During all of this time, however, Neary was being processed for discharge. Following his appearance before the Aptitude Board, Neary was transferred to the casual platoon of his battalion. On August 26, 1952, he turned in his rifle, mess kit, knapsack, helmet and such other gear. On Tuesday, September 2nd, he turned in his uniforms and clothing and was issued a civilian suit of clothes. Also on that same day, he was paid $100 mustering-out pay and about $100 as the net amount of back pay due him.

In the morning of September 3, 1952, Neary signed all of the papers requiring his signature upon discharge, and he was presented with a discharge button and a properly executed certificate of discharge signed by Major Noren, the Commanding Officer of the Fifth Recruit Training Battalion. All such papers were delivered to Neary by Lt. Kenneth E. France, the Battalion Adjutant. Lt. France, after delivering the discharge material to Neary, shook hands with him and Neary departed by himself from the Battalion Headquarters, apparently out of Military custody and free to go where he pleased, dressed in civilian clothes and carrying his discharge certificate in a brown manila envelope. During the next two or three hours Neary, after buying a bus ticket at the Triangle Post Exchange, "killed time" in waiting for the bus by visiting the Mainside P. X. and a chapel.

Approximately five or ten minutes after Neary had received his certificate of discharge and had departed from the Bat-

talion area for the bus station, which was elsewhere on the base, Sergeant Major Edward Doughman received a telephone call from Post Headquarters to the effect that the portion of the post special order directing Neary's discharge would be rescinded. On this date, the Commanding General signed an endorsement disapproving the recommendation of the Aptitude Board in regard to Neary and directed that he be returned to duty. Pursuant to such disapproval, Post special order No. 368–52, dated September 3, 1952, was promulgated, which order directed "the cancellation" of the August 28th order so far as it related to Neary.

Following the telephone call from Post Headquarters, a non-commissioned officer was dispatched from Battalion Headquarters to pick up Neary and take him back into military custody. At about 12:00 Noon, a few hours after Neary had received his certificate of discharge, he was picked up at the Triangle Post Exchange where he was waiting for a bus. Neary was taken back to the Battalion Headquarters where all of his discharge papers were taken from him and were destroyed, and all references to the train of events between August 25 and September 3, 1952, both inclusive, were deleted or omitted from Neary's Service Record Book. Neary was taken back to the disbursing office and ordered to return approximately $145 of the $200 paid to him in the process of discharge, Neary having spent the difference for his bus ticket and other personal purchases. Neary was ordered back to duty over his protest.

On December 4, 1952, Neary absented himself from the Marine Corps without permission and remained absent until July 16, 1953, on which date he was apprehended. He was tried before a General Court-Martial on October 7 and 12, 1953, for desertion, found guilty and sentenced to a Bad Conduct Discharge, forfeiture of all pay and allowances, confinement at hard labor for one year and four months, and reduction to the grade of private. A convening authority re-

duced the sentence of confinement to eight months, which was affirmed by the Board of Review. On a motion for reconsideration, the Board of Review, on March 23, 1954, again affirmed the sentence.

After serving about four months of his sentence, the imprisonment portion of it was commuted. Since the period within which he may appeal to the Court of Military Appeals has not yet expired and since by Marine Corps regulations Neary cannot be issued a Bad Conduct Discharge prior to the expiration of the appeal time, Neary was and is now assigned to temporary additional duty, so-called, at the Marine Corps Barracks, United States Naval Base, Kittery, Maine.

By agreement of the parties, a memorandum prepared by a Major McCaffrey on an interview had by him with Major General Silverthorn was admitted in evidence, subject, however, to the petitioner's right to comment upon the weight to be given it. The memorandum was prepared for use in the Court-martial proceedings concerning Neary. Among other things, General Silverthorn is reported as having said, in response to a question submitted by Appellate Government counsel, that he did not approve the recommendation of the Aptitude Board in regard to Neary and later changed his mind. He also identified the two inter-office memoranda of August 29th and 30th as relating to Neary.

The basic issue of this case is whether or not the petitioner received a valid discharge from military service on September 3, 1952.

The petitioner contends that Commanding General Silverthorn had undisputed authority, on the basis of Aptitude Board reports and recommendation, to direct discharges for unsuitability; that the Assistant Post Adjutant, Lt. J. V. Grace, had general authority on behalf of the Commanding General to sign post special orders such as that of August 28th, directing the discharge of Neary; that in accordance with the standard procedure established by the Commanding General, Lt. Grace would have had in hand the approval of the Commanding General of the recommendation of the Aptitude Board before issuing said order of August 28th; that said order was issued directing the discharge of Neary; that all of the officers who would process the discharge of Neary were expected to and, in fact, did, rely and act on the basis of said order; that based on assumptions of facts most favorable to the Government, said order was valid or at worst, voidable; that being voidable it could be revoked, but only prior to the time when it has been acted upon and rights have vested pursuant to such action; and that since the order of cancellation, dated September 3, 1952, was not issued before Neary was handed his certificate of discharge on September 3, 1952, the August 28th order was not timely revoked.

As a second argument, the petitioner contends that, even if this Court should decide that the August 28th order was not valid or at worst voidable, there is no credible evidence in the record to rebut the presumption, arising from the issuance of the August 28th order, that Major General Silverthorn had approved the Aptitude Board's recommendation in regard to Neary. The petitioner asserts that the only evidence which connects the inter-office memoranda to Neary and the only bit of evidence suggesting that Major General Silverthorn did not sign an endorsement approving Neary's discharge and then later changed his mind and disapproved it, comes from a memorandum prepared by a Major McCaffrey on an interview had by him with Major General Silverthorn on March 20, 1954, some year and a half after the events in regard to Neary had transpired.

In commenting on the weight to be given this memorandum, the petitioner stated that it is composed of nothing but hearsay and compounded hearsay evidence; that Major McCaffrey prepared his memorandum on March 22, 1954, two days after he had interviewed the General; that he did not ask General Silverthorn to look over the memorandum or to sign it; that the memorandum contains principally conclusions of law; that **it**

contains a number of obvious errors; that whenever the questions and answers came close to the important questions before the Court, the answers became ambiguous and unsatisfactory to anyone trying to get at the facts of this case; and that finally it is significant that Major General Silverthorn purports to have such a clear and definite memory of the Neary case when his G–1, Colonel Geiger, who had the primary responsibility for reviewing in the General's behalf all recommendations of the Aptitude Board, had no such recollection of the individual facts of the Neary case.

The Government, on the other hand, contends that the Commanding General was the only person authorized to take final action on Aptitude Board recommendations, that this authority required the exercise of his personal discretion and could not be and was not delegated by him to any subordinate officer; that no approval, in fact, was given by the Commanding General of the recommendation of the Aptitude Board in regard to Neary; that the fact that Neary's name appeared on the August 28th order and that Neary and certain officers relied and acted upon said order, do not supply the fundamental lack of authority for the order as it related to Neary; and, therefore, Neary did not receive a valid discharge on September 3, 1952, and is still a member of the United States Marine Corps.

■ At first it was contended by the Government that Neary had not exhausted his administrative remedies. Although he had twice presented his court-martial case to the Board of Review, Neary has not appealed to the Court of Military Appeals nor petitioned the Board for the Correction of Naval Records. Both of these remedies are still open to him. The Government, however, evidently now appreciating that their contention was based upon a misapprehension of Neary's claim, concedes that this Court does have jurisdiction to hear and determine this action.

The concession of the Government is justified. Neary's habeas corpus application is directed against his detention in the service and not any detention under a court-martial conviction. Gusick v. Schilder, 1950, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 and related cases are limited to where the habeas corpus petitioner was attacking the court-martial proceedings without more. See McKinney v. Finletter, 10 Cir., 1953, 205 F.2d 761. Neary is not attacking the court-martial proceedings in this action. Moreover, whether Neary was a civilian or a Marine as of September 3, 1952, is an issue which this Court alone, as distinguished from military courts, can determine. Therefore, there are no administrative remedies for Neary to exhaust and he is properly before this Court.

■ The determination of the issue in this case depends upon whether Post Special Order of August 28, 1952, directing Neary's discharge was, on the one hand, valid or at worst voidable, or, on the other hand, void.

The Court is cognizant of the importance of the issue involved. Much turns on whether a person is a civilian or in the service, and the petitioner has provided this Court with a strong and persuasive brief in support of his contentions. Nevertheless, this Court is constrained to find against him.

The Commanding General of the Recruit Depot was authorized, by the Commandant of the Marine Corps, through a joint letter, to discharge recruits for "unsuitability" under certain specific conditions. Those conditions were: (1) on recommendation of an Aptitude Board; (2) on the Commanding General's review of the Aptitude Board's report and his approval of the Board's recommendation for discharge.

Although an order was issued by a subordinate officer "by direction" of the Commanding General directing the discharge of Neary, this Court is of the opinion that the Commanding General had not complied with the prescribed conditions before the issuance of the August 28th order. After a careful consideration of all of the facts, the Court

is of the opinion that Major General Silverthorn did not approve the recommendation of the Aptitude Board in regard to Neary before the August 28th order was issued. That approval was mandatory and without it, the order directing Neary's discharge was a nullity and void *ab initio* insofar as it related to Neary. This is true regardless of whether Neary and subordinate officers and personnel relied and acted upon that order as being valid. Consequently, the discharge of Neary, received on September 3, 1952, was legally ineffective.

The only related case cited by either side is United States ex rel. Roberson v. Keating, D.C.Ill.1949, 121 F.Supp. 477. In that case a sailor was issued an honorable discharge on December 1, 1947, by an officer duly authorized to issue such discharges. After his discharge, or simultaneously with its issuance, the sailor reenlisted pursuant to an understanding that he was to have certain benefits. Four days later, the sailor was summoned to the administrative office and informed that there had been a miscalculation of the expiration date of his first enlistment and that technically he did not come within the order of the Secretary of the Navy granting certain benefits and permitting that kind of discharge coupled with reenlistment. The Court held that since the discharge of December 1, 1947, was valid or voidable, it would deprive the Navy court-martial of any jurisdiction whatsoever, and nothing that happened after that date by way of Naval procedure could possibly be valid.

That case may be distinguished on the narrow ground that in the Roberson case, authority rested in the person who authorized the discharge, but he acted on a mistaken knowledge of the facts. In Neary's case, an individual (Lt. Grace) who possessed no authority to effect Neary's discharge, either presumed such authority or acted erroneously in directing his discharge. Assuming, however, that the Roberson case is applicable, this Court is disinclined to accept it as a controlling precedent.

This Court therefore concludes that Neary is still a member of the United States Marine Corps and is not illegally restrained in the service.

It is, therefore, ordered, adjudged and decreed that the application of Jerry D. Neary for a writ of habeas corpus be, and hereby is,

Denied.