**John D. MARTIN, Petitioner,**

v.

**Robert N. YOUNG, Commanding General Sixth United States Army, et al., Respondents.**

No. 34804.

United States District Court
N. D. California, S. D.

Sept. 1, 1955.

_____

1. See Association of Westinghouse Salaried Employees v. Westinghouse Corp., 348 U.S. 437, 443 note 2, 75 S.Ct. 488.

Robert E. Hannon, Castro Valley, Cal., for petitioner.

Lloyd H. Burke, U. S. Atty., Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for respondents.

GOODMAN, District Judge.

Petitioner, a private in the United States Army, is imprisoned at the Presidio of San Francisco, within this District, waiting trial by a general court-martial of a charge preferred against him on April 8, 1955. By petition for the writ of habeas corpus, he seeks his release on the ground that the Department of the Army is without jurisdiction to try him by court-martial for the offense charged.

The issue tendered by the petition is solely one of law. The relevant facts are undisputed. On November 25, 1947, petitioner enlisted in the United States Ar-

my for a term of three years. Thereafter, by virtue of the Act of Congress of July 27, 1950, 64 Stat. 379, 10 U.S.C.A. § 628 note, his term of enlistment was extended one year. On November 27, 1950, during this term of enlistment as extended, petitioner was confined as a prisoner of war by the Chinese Communists in Korea. He was held as a prisoner of war until April 21, 1953, when he was returned to American military control. On August 3, 1953, he was honorably discharged from the Army, his enlistment having expired while he was a prisoner of war. The following day, petitioner reenlisted in the Army for a term of six years. He was serving this second period of enlistment when the charge, on which he is now waiting trial, was preferred on April 8, of this year. The charge against petitioner is that of violating Article 104 of the Uniform Code of Military Justice, 50 U.S.C.A. § 698, "Aiding the enemy", during the period between June 1951 and April 1953, while he was a prisoner of war.

■ The issue of law presented by these facts is whether the Army lost jurisdiction to court-martial petitioner for the offense charged when it discharged him from the term of enlistment, during which the offense was allegedly committed. Prior to the enactment of the Uniform Code of Military Justice in 1950, the armed forces had no jurisdiction to court martial persons for offenses, other than fraud, committed during a term of enlistment from which they had been discharged. This was so, even though the offender had reenlisted, and was still in military service when the charges were preferred. U. S. ex rel. Hirshberg v. Cooke, 1949, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621. If the offense over which the armed forces had lost jurisdiction was committed outside the United States and was not embraced by a criminal statute having extra-territorial application, there was no United States

tribunal in which the offender could be tried. Consequently, many members of the armed forces charged with committing such serious offenses as murder and robbery, while stationed outside the United States, could not be brought to trial. To bridge this gap in the law, the Congress enacted Article 3(a) of the Uniform Code of Military Justice in 1950, 64 Stat. 109, 50 U.S.C.A. § 553(a). Article 3(a) provides that: "Any person charged with having committed, while in a status in which he was subject to this code, an offense against this code, punishable by confinement of five years or more and for which the person cannot be tried in the courts of the United States or any State or Territory thereof or of the District of Columbia, shall not be relieved from amenability to trial by courts-martial by reason of the termination of said status." The Congress did not intend Article 3(a) to be a general grant of court-martial jurisdiction over persons who had been discharged from the armed forces. The legislative history of this statute makes it clear that the Congress meant what the plain language of the statute says—that the armed forces should have court-martial jurisdiction over persons charged with committing serious offenses during a term of enlistment which had terminated if, and only if, such person could not be tried in the civil courts.[1]

The precise question for decision, then, is whether petitioner could be tried in the courts of the United States for the offense the Military have lodged against him. That he could be so tried, is clear. The general charge against him is violation of Article 104 of the Uniform Code of Military Justice, Aiding the Enemy. The specification delineating the charge is as follows:

"Specification: In that Private John D. Martin, U. S. Army, Detachment No. 1, Casual, 6017 Area Service Unit, Station Complement, Camp Hanford, Washington, then held as a

1. Senate Report 486, 81st Congress, Second Session, 1950 U.S.Code Congressional Service 2226 and 2230; 95 Cong. Rec. 5720–21; 96 Cong.Rec. 1294–5, 1358, 1366–8, 1412–13, 1435.

prisoner of war by the enemy, did, between on or about June 1951 and April 1953, at or near Prisoner of War Camp No. 3, North Korea, which camp was maintained for the purpose of interning United Nations prisoners of war, without proper authority, wrongfully, unlawfully, and knowingly collaborate, communicate, and hold intercourse, directly and indirectly with the enemy by joining with, participating in, and leading discussion groups and classes conducted by the enemy reflecting views and opinions that the United Nations and the United States were illegal aggressors in the Korean conflict, that it was the fault of the United States Government that he, the said John D. Martin, and others were prisoners of war in Korea, and that they, the said prisoners of war, should not have been sent to Korea; by extolling and attempting to convince other prisoners of war of the virtues of Communism; by participating in the preparation of Communist propaganda writings and articles designed to promote disloyalty and disaffection among the United States troops then and there held as prisoners of war by the enemy; by attacking the war aims of the United States, asserting that the United States had used germ warfare in Korea; by voluntarily attending social functions conducted by his captors; by living, eating, drinking with, and otherwise fraternizing with his captors; and by otherwise unnecessarily cooperating with his captors, thereby giving aid and comfort to the enemy."

The conduct described by this specification violates at least three criminal statutes under which petitioner could be tried in a United States District Court. They are as follows:

(1) 18 U.S.C. § 2381. *Treason*

"Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years and fined not less than $10,000; and shall be incapable of holding any office under the United States."

(2) 18 U.S.C. § 953. *Private correspondence with foreign governments*

"Any citizen of the United States, wherever he may be, who, without authority of the United States, directly or indirectly commences or carries on any correspondence or intercourse with any foreign government or any officer or agent thereof, with intent to influence the measures or conduct of any foreign government or of any officer or agent thereof, in relation to any disputes or controversies with the United States, or to defeat the measures of the United States, shall be fined not more than $5,000 or imprisoned not more than three years, or both."

(3) 18 U.S.C. § 2387. *Activities affecting armed forces generally*

"(a) Whoever, with intent to interfere with, impair, or influence the loyalty, morale, or discipline of the military or naval forces of the United States:

"(1) advises, counsels, urges, or in any manner causes or attempts to cause insubordination, disloyalty, mutiny, or refusal of duty by any member of the military or naval forces of the United States; or

(2) distributes or attempts to distribute any written or printed matter which advises, counsels, or urges insubordination, disloyalty, mutiny, or refusal of duty by any member of the military or naval forces of the United States—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both, and shall be ineligible for employment by the United States or any department or agency

thereof, for the five years next following his conviction."

Though the latter statute does not by its terms specifically embrace acts committed outside the United States, it is the type of criminal statute which the Supreme Court held in United States v. Bowman, 1922, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149, would be inferred to have extra-territorial application in the absence of a provision to the contrary.

 Counsel for the government urges that the offense with which petitioner is charged does not necessarily measure up to the offenses embraced by these criminal statutes because proof of criminal intent is necessary for a conviction under these statutes, while it is not for a conviction under Article 104. It is a violation of Article 104, he contends, merely to communicate with the enemy without authorization regardless of the nature of the communication or the intent with which it is made. It is unnecessary to determine whether this interpretation of Article 104 is correct. For, the character of the offense charged does not depend primarily upon the particular article under which it is laid, but rather on the facts alleged. The factual allegations of the specification claim that petitioner acted "wrongfully, unlawfully, and knowingly." These are the words customarily employed to allege criminal intent.[2] The United States Manual for Courts-Martial, § 28, itself, notes that the words "wrongfully" and "unlawfully" import criminality. Consequently, it is clear that the charge as specified states an offense triable in the civil courts. The court-martial is therefore without jurisdiction to try petitioner on the charge as stated. Being without jurisdiction to try him for the offense charged, it can have no jurisdiction to try him for some lesser offense, even though it might be included in the offense charged. Rosborough v. Rossell, 1 Cir., 1945, 150 F.2d 809.

 Moreover, it would be a perversion of Article 3(a) to sustain the court-martial's jurisdiction to try petitioner on the ground that some act included in the specification, if committed without criminal intent, would be violative of Article 104, while it would not be violative of any criminal statute under which petitioner could be tried in the civil courts. Here the Army has charged petitioner with grossly disloyal conduct clearly proscribed by the criminal statutes noted. If it were proven that petitioner knowingly pursued this course of conduct, an inference of criminal intent would be compelling in the absence of some defense such as coercion. It is obvious that if petitioner is to be tried for the conduct charged he could and should be brought to trial in the civil courts. The Congress did not intend Article 3(a) to be authority to the armed forces to bring discharged personnel to trial by court-martial for conduct which in its significant aspects constitutes an offense triable in the civil courts merely because some trivial aspect of this conduct, constituting a military offense, would not in itself be an offense cognizable by the civil courts. Article 3(a) is clear and unambiguous. Its meaning and purport should be as understandable to the military as to a Federal Judge.

It is abhorrent to the Anglo-Saxon concept of justice to attempt the exercise of judicial power where jurisdiction is absent.[3] It should be equally so in the case of the military. Article 3(a) plainly forbids the exercise of jurisdiction by

---

2. In United States v. Batchelor, CM 377832, the Board of Review at page 91 et seq. of its decision, approved the instructions of the law officer regarding criminality and intent upon a charge similar to the present one by referring to the discussion of the intent necessary to constitute treason in Chandler v. United States, 1 Cir., 1948, 171 F.2d 921, 942.

3. See Chief Justice Marshall's statement in Bank of United States v. Deveaux, 1809, 5 Cranch 61, 87, 3 L.Ed. 38, that the duties "to exercise jurisdiction where it is conferred, and not to usurp it, where it is not conferred, are of equal obligation."

the Army over the petitioner for the offense charged. It vests such jurisdiction in the United States courts. The public weal suffers no detriment, for the government can proceed, if it be so advised, in an appropriate United States court.

There remains for consideration only the question of the appropriateness of this Court's interposition at this time in the court-martial proceedings. The general and well-known rule is that court review should await the final disposition of such proceedings.[4] But this rule is subject to the exception that if the deprivation of liberty is clear, and irreparable harm will be done, intervention intermediately is justified.[5]

Here, petitioner is imprisoned by the Army to await trial for conduct clearly beyond its jurisdiction to adjudge and punish. He has already been confined for nearly six months and a trial date has not even been set. To await the final military decision, via the admittedly long military channels, would mean the incarceration of petitioner indefinitely, perhaps for years. That such a loss of liberty is irreparable is so clear as to require no further statement.

It is no answer to say that the military is able to determine its own jurisdiction, and may, at the court-martial or upon review, recognize its lack of jurisdiction. For a decision by the military that it is without jurisdiction would not necessarily dispose of the charge against petitioner. Since the offense with which he is charged is cognizable in the United States courts, he would still be amenable to trial there. A void conviction by a court-martial for the offense would not there support a plea of double jeopardy. Mitchell v. Youell, 4 Cir., 1942, 130 F.2d 880 and cases cited therein. Thus, if petitioner is brought to trial by court-martial, he is faced with the very real possibility of two trials for the same offense. In In re Lincoln, 1906, 202 U.S. 178, 183, 26 S.Ct. 602, 50 L.Ed. 984, the Supreme Court noted that a conflict between two tribunals asserting jurisdiction over the same offense is an exceptional circumstance which may justify intervention by habeas corpus in a pending proceeding.

Moreover, the mere assertion of jurisdiction by the Army thwarts the purpose of the Congress in limiting, as it does, the reach of Article 3(a). The Congressional proceedings, noted in footnote 1 supra, indicate that the Congress was concerned about the serious consequences of the exercise by the military of court-martial jurisdiction over persons whose term of enlistment had terminated. The Congress was well aware that the assertion of court-martial jurisdiction might mean long confinement without the possibility of bail and a trial thousands of miles from home and friends. It was to prevent such occurrences, in so far as possible, that the Congress limited court-martial jurisdiction over persons whose enlistment has terminated to those where trial could not be had in the courts of the United States.

In view of the Army's clear lack of jurisdiction to court-martial petitioner for the offense charged, and the exceptional circumstances noted, the writ of habeas corpus will issue. Inasmuch as the relevant facts are not disputed and the legal issue was fully argued upon the

4. Gusik v. Schilder, 1950, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146; McMahan v. Hunter, 10 Cir., 1950, 179 F.2d 661.

5. In re Loney, 1890, 134 U.S. 372, 10 S.Ct. 584, 33 L.Ed. 949; State of Ohio v. Thomas, 1899, 173 U.S. 276, 19 S.Ct. 453, 43 L.Ed. 699; Boske v. Comingore, 1900, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846; Matter of Heff, 1905, 197 U.S. 488, 25 S.Ct. 506, 49 L.Ed. 848. See the discussions regarding exceptional circumstances in: Ex parte Royall, 1886, 117 U.S. 241, 251–252, 6 S.Ct. 734, 29 L.Ed. 868; People of State of New York v. Eno, 1894, 155 U.S. 89, 96–97, 15 S.Ct. 30, 39 L.Ed. 80.; In re Lincoln, 1906, 202 U.S. 178, 181–183, 26 S.Ct. 602, 50 L.Ed. 984; Henry v. Henkel, 1914, 235 U.S. 219, 228–230, 35 S.Ct. 54, 59 L.Ed. 203. See also, Pacific Telephone & Telegraph Company v. Kuykendall, 1924, 265 U.S. 196, 44 S.Ct. 553, 68 L.Ed. 975; A. F. L. v. Watson, 1946, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873.

hearing of the order to show cause and thereafter briefed, a return to the writ and a further hearing are unnecessary. Pursuant to the Court's authority under 28 U.S.C. § 2243, the respondents are ordered to forthwith release petitioner from arrest and confinement. Present an order accordingly.