**Matter of James C. TAYLOR, Petitioner.**
**No. 11588.**

United States District Court
W. D. Missouri, W. D.
March 28, 1958.

Wayne W. Waldo, Waynesville, Mo., for petitioner.

Edward L. Scheufler, U. S. Atty., O. J. Taylor, Asst. U. S. Atty., Kansas City, Mo., Peter S. Wondolowski, Lt. Col., U. S. Army, Judge Advocate General's Corps, Washington, D. C., for respondent.

RIDGE, District Judge.

Ordinarily, a United States District Court will not entertain a petition for writ of habeas corpus by one confined under judgment and sentence of a court-martial, "save in rare cases where exceptional circumstances of peculiar urgency" are shown to exist. United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 17, 46 S.Ct. 1, 3, 70 L.Ed. 138. The facts in the instant habeas corpus proceeding do not appear to fall within the exception so noted.

Petitioner, a member of the National Guard of the United States, with his own consent and the consent of the Governor of North Carolina, was ordered into active duty for training with the United States Army, with reporting date of January 13, 1957. The order specified that the training period would be for six months and that the petitioner would be relieved from duty in time to arrive at his home on July 12, 1957, on which date he would revert to inactive status unless sooner relieved (Petitioner's Exhibit 2). While assigned to Company D, First Battalion, First Training Regiment Engineer, Fort Leonard Wood, Missouri, petitioner absented himself without proper authority from that organization on March 29, 1957, and remained so absent until he was apprehended by military authorities at Charlotte, North Carolina. On the same day, he was transferred for confinement in the Post Stockade, Fort Jackson, South Carolina.

While confined in the Post Stockade, Fort Jackson, South Carolina, petitioner on May 16, 1957, again absented himself without proper authority and remained so absent until June 12, 1957, when he was again apprehended and confined in the Post Stockade, Fort Jackson, South Carolina. The petitioner remained in such confinement until June 24, 1957, when he was returned to his parent unit at Fort Leonard Wood, Missouri. After his return to Fort Leonard Wood, petitioner's Commanding Officer, on or about June 26, 1957, had the Company Clerk prepare charge against the petitioner, alleging two offenses of absence without proper authority from his organization in violation of Article 86, Uniform Code of Military Justice (10 U.S.C.A. § 886). After being informed of such charges petitioner was released from training duty, but under orders not to leave Fort Leonard Wood Post while awaiting trial by court-martial for the above offenses. Petitioner's Commanding Officer duly executed and forwarded the charge sheet made against petitioner to his next superior in command at Battalion Headquarters. In due course the same was forwarded to Regimental Headquarters, to the officer exercising summary court-martial jurisdiction as prescribed by paragraph 32(f), Manual for Courts-Martial, United States, 1951 (16 Federal Register, 1303–1469, 10 Feb. '51).

While the charges were so lodged with the convening authority the petitioner on July 8, 1957, again absented himself without authority from his organization at Fort Leonard Wood, Missouri, and remained so absent until August 7, 1957, when he was again apprehended and confined by military authorities at Charlotte, North Carolina. On August 8, 1957, he was transferred for confinement at the Post Stockade, Fort Jackson, South Carolina. On August 17, 1957, petitioner was transferred for confinement to the Post Stockade, Fort Leonard Wood, Missouri.

After petitioner absented himself without leave on July 8, 1957, and on some date subsequent to July 12, 1957,

934

the original court-martial charge sheet, alleging the two offenses of absence without proper authority which had been prepared on June 26, 1957, were returned by the Regimental Officer exercising summary court-martial jurisdiction to petitioner's Commanding Officer, with the notation made by Regimental Headquarters, "Forwarded without action pending return of E.M." (E.M., i. e. Enlisted Man). It is the testimony of petitioner's Commanding Officer, before this Court, that such charge sheet was returned to him for the purpose of consolidating a new charge therein for the last unauthorized absence of petitioner; that on or about August 10, 1957, he had the Company Clerk prepare a new charge sheet alleging an offense of failure to obey a lawful order, and three offenses of absence without leave, in violation of Articles 92 and 86, U.C.M.J. (10 U.S. C.A. §§ 892 and 886.) After the new charge sheet was so prepared the Company Clerk destroyed by burning the charge sheet preferred by petitioner's Commanding Officer on or about June 26, 1957. The new charge sheet was then delivered by petitioner's Commanding Officer to his Battalion Commander. Before petitioner's Commanding Officer signed and swore to that new charge sheet, the Battalion Commander suggested to petitioner's Commanding Officer that an additional charge of desertion in violation of Article 85, U.C.M.J. (10 U.S.C.A. § 885) be incorporated therein. The record reveals that on August 18, 1957, that additional charge was incorporated, and petitioner was informed of the consolidated charges so contained in the new charge sheet. On the same date, petitioner's Commanding Officer swore to said charges and forwarded same to the officer exercising summary court-martial jurisdiction, as required by paragraph 32(f), Manual for Courts-Martial, United States, 1951. On August 22, 1957, the court-martial charges were investigated under the provisions of Article 32, U.C.M.J. (10 U.S. C.A. § 832). The investigating officer recommended trial by General Court-

Martial on the offenses so charged. September 10, 1957, the charges were referred for trial before a General Court-Martial, convened by the Commanding General, Fort Leonard Wood, Missouri. October 26, 1957, the petitioner was arraigned on the aforenamed charges. He pleaded not guilty. At court-martial trial thereon he was found guilty on all offenses charged and sentenced to dishonorable discharge, with forfeiture of all pay and allowances, and confinement at hard labor for one year and six months. During the course of his trial the petitioner, through his counsel, moved to dismiss the charges on the ground that the court-martial lacked jurisdiction over the person of petitioner and the offense, contending that National Guardsmen of the United States were not subject to courts-martial jurisdiction when on active duty training for six months, pursuant to section 233(d), Armed Forces Reserve Act of 1952 (10 U.S.C.A. § 672(d)). The motion was denied by the Law Officer.

On January 9, 1958, the Staff Judge Advocate reviewed the record of trial and rendered his written opinion thereon to the convening authority as required under the provisions of Article 61, U.C.M.J. (10 U.S.C.A. § 861). The Staff Judge Advocate concluded that the evidence was legally insufficient to support the finding of guilty of the offense of failing to obey a lawful order in violation of Article 92, U.C.M.J., and accordingly recommended that that charge be disapproved; and, that the sentence of confinement be reduced to one year. He found that the remaining charges were supported by the evidence. He also concluded that the court-martial had jurisdiction over the person of the petitioner for such other offenses and that petitioner's claim to the contrary was without merit.

On January 29, 1958, the convening authority, under the provisions of Article 64, U.C.M.J. (10 U.S.C.A. § 864) disapproved the charge of failure to obey a lawful order in violation of Article 92, and approved the remaining findings of

guilty, and reduced the period of petitioner's confinement to one year. On February 27, 1958, he forwarded the record of trial for review by a Board of Review as required under the provisions of Article 65, U.C.M.J. (10 U.S.C.A. § 865). The record of trial was received in the office of the Judge Advocate General of the Army, Washington, D. C., on February 28, 1958, for referral to the Board of Review. The Board of Review has not yet reviewed the record of trial for legal sufficiency as required under the provisions of Article 66, U.C.M.J. (10 U.S.C.A. § 866).

On February 12, 1958, petitioner filed in this Court petition for writ of habeas corpus, alleging that his detention and imprisonment by virtue of the sentence imposed against him by the General Court-Martial convened at Fort Leonard Wood, Missouri, on October 26, 1957, is and was in violation of the Fifth Amendment to the Constitution on the ground of denial of due process of law, in that the judgment and sentence of said court-martial was void and of no legal force or effect because said General Court-Martial had no jurisdiction over the person of petitioner, nor jurisdiction over the subject matter of the offenses with which he was charged. The contention so made has a two-fold aspect. Tersely stated, it is: (1) that as a member of the National Guard, ordered to "active duty for training," petitioner was not subject to discipline by the Regular Army of the United States under the Uniform Code of Military Justice, *supra*; and, (2) that the charges preferred against him on August 18, 1957, were instituted and commenced at a time when petitioner had acquired a civilian status on July 12, 1957.

Petitioner asserts that he is not here attacking the court-martial proceedings, as such, at which he was tried and convicted. He contends that he is attacking the jurisdiction of the respondent over his person, and the jurisdiction of the Army to subject him to courts-martial proceedings under the Uniform Code of Military Justice, *supra*, both as to his present confinement and to any custody or authority attempted to be asserted over his person, whatsoever. If petitioner's contention could be legally sustained, and there was a clear lack of jurisdiction in the Army to court-martial petitioner for the offenses charged against him subsequent to July 12, 1957, that is a matter which, in our opinion, would present "a rare case, with exceptional circumstances of peculiar urgency" which would authorize this Court to entertain jurisdiction herein and issue a writ of habeas corpus in petitioner's behalf. Cf. Martin v. Young, D.C., 134 F.Supp. 204. As a consequence of that potential, we granted a show cause order herein, and thereafter held a hearing on the instant petition for writ of habeas corpus.

Under Article 2(1), U.C.M.J. (10 U.S. C.A. § 802(1)) it is provided:

> "The following persons are subject to this Code: (1) All persons belonging to a regular component of the Armed Forces * * * and all other persons lawfully called or ordered into, or to do duty in or for training in, the Armed Forces, from the dates they are required by the terms of the call or order to obey the same * * *."

Petitioner concedes: "(b)y orders of Wilbur M. Brucker, Secretary of the Army, with Petitioner's consent and the consent of the Governor of the State of North Carolina, the Petitioner was ordered to active duty for training for a period of 6 months, effective 13 January, 1957 and by said order Petitioner was released from duty effective July 12, 1957." Par. 7, Petition for Writ of Habeas Corpus. The orders calling petitioner to active duty cite "subsection 233(d), Armed Forces Reserve Act of 1952 (P.L. 476–82d Congress)." That statute provides:

> "A member of a reserve component may, by competent authority, be ordered to active duty or active duty for training at any time with his consent: *Provided,* That no member of the National Guard of the United States or Air National Guard of the

United States shall be so ordered without the consent of the Governor or other appropriate authority of the State, Territory, or District of Columbia concerned." 66 Stat. 490.

By Section 301 of the last above Act (32 U.S.C.A. § 101), the National Guard of the United States is designated "Reserve Components of the Army" and all "enlisted members" thereof are "Reserve enlisted members of the Army." Part III, P.L. 476, supra.

Because the Armed Forces Reserve Act of 1952, supra, defines "Active Duty" to mean "full-time duty in the active military service of the United States, other than active duty for training" and "Active duty for training" as "full-time duty in the active military service of the United States for training purposes" (Section 101(b) (c), P.L. 476, supra), it is petitioner's contention that under Section 709 of the same Act, National Guardsmen on duty for training purposes were not, at the time of petitioner's court-martial, subject to government by the Regular Army; that in ordering petitioner to duty for training the Army did so as a service to the State of North Carolina; that North Carolina had control over petitioner and was responsible for his military government and training during the time he was stationed at Fort Leonard Wood; hence, petitioner asserts, he is and was as a National Guardsman only subject to court-martial by the National Guard of the State of North Carolina for any AWOL he took while at the above Post, as provided by Section 326, Title 32 U.S.C. (1952 Ed., Supp. IV, p. 2233).

It is difficult to follow petitioner's reasoning in the above respects. As we understand, it amounts to this: Petitioner contends that by Section 101(c) and (d) of the Armed Forces Reserve Act of 1952, supra, "active duty for training" was intended by the Congress to mean something other than full-time "active duty." That a National Guardsman cannot be ordered to "full-time active duty" under Section 709 of that Act, which provides that National Guardsmen are to be "administered * * * and trained in their status as members of the National Guard * * * of the several States." Therefore, he asserts that he never was on full-time "active duty" in the Armed Forces of the United States; and, therefore, he is only subject to trial by a National Guard Court-Martial under Sections 326–333 of Title 32 U.S.C.A. for the offense charged against him in the court-martial proceedings under whose judgment and sentence he is now detained. He further contends that if respondent premises petitioner's "active duty status" under Section 710 of the Armed Forces Reserve Act of 1952, supra, respondent has misinterpreted that section, because in the codification of Title 32 U.S.C., by the Act of August 10, 1956 (P.L. 1028, 84th Congress, 2d Session) the Congress eliminated from Section 710, supra, the provision that "during * * * active duty in the service of the United States, they (National Guardsmen) shall be subject to the laws and regulations applicable to members of the Army and Air Force." By that elimination in the recodification of Title 32, supra, petitioner claims it is made manifest that the Congress never did intend to subject National Guardsmen to the Uniform Code of Military Justice (10 U.S.C.A., Chap. 47) while on "active duty for training," and hence the Army had no jurisdiction over him.

We shall not follow petitioner in all the ramifications of his contention made in the above respects. It is sufficient to say that under the Armed Forces Reserve Act of 1952, petitioner as a "Reserve enlisted member of the Army" (Sec. 301, P.L. 476, supra) could be ordered to "active duty for training * * * with his consent * * * (and) the consent of the Governor" of North Carolina. § 233(d), P.L. 476, supra. His orders to active duty in the Armed Forces were so conditioned. The fact that in the codification of Titles 10 and 32 there was a change in the verbiage of some of the sections thereof, from terminology used in previous Acts of Congress codified thereby, can be of no solace to petition-

er's contention. "The object of (such) new titles had been to restate existing law, not to make new law. * * * Adherence to the substance of existing law, however, has not always meant adherence to the letter of the statute." Report H. R. 7049—Rev.T. 10 and 32, U.S.C.—84th Cong., 2d Sess., U.S.Code Cong. & Adm. News 1956, Vol. 3, p. 4620. In revising Titles 10 and 32, the Congress considered laws enacted over a long period of time, "extending from 1789 to the present date," that had been drawn by many draftsmen. "The result has been laws full of contradictions, duplications, ambiguities, obscurities, and absolute provisions." Page 4613, supra. The purpose of the codification thereof was to bring clarity into the Code, where confusion previously existed "not only for the armed forces but the Government as a whole."

In such codification, the definition of "active duty" as contained in Section 101 (22) of Title 10 (10 U.S.C.A. § 101(22)) does not effect any change in the Armed Forces Reserve Act of 1952 as contended by petitioner. On the contrary, the source of such definition is made readily apparent from a consideration of the legislative history of the Armed Forces Reserve Act of 1952. Section 710 of that Act was a reenactment of Section 111 of the National Defense Act of 1916 (U.S. C.Congr. & Adm.News, 82 Congr. 2nd Session, 1952, p. 2053.) and it was carried into the 1956 Code as Section 672 of Title 10, which provides for active duty service of reserve components of the Armed Forces. That there were eliminations in Title 32 of the 1956 Code in the above respect is because Title 32, as now codified, was intended to provide only for training of the National Guard while on "inactive status"; and Title 10 of the Code was intended to include all duty in the Armed Forces from "active status" considerations. See U.S.C.Cong. & Adm. News—84th Cong.1956, p. 4643. Therefore, the only conclusion to be reached is that under petitioner's "Letter Orders" (Pet.Ex. 2) and Sec. 233(d) of the Armed Forces Reserve Act of 1952, supra (codified in part as Section 672 of Title 10 U.S.C.), petitioner was a member of the Armed Forces of the United States on "active duty" for "full-time training" from January 13, 1957, to July 12, 1957, and during that period of time subject to the Uniform Code of Military Justice.

But, notwithstanding that status, petitioner further contends that he was not subject to court-martial under U.C. M.J. because the charges on which he was tried were not commenced, or preferred, until subsequent to July 12, 1957, after he had returned to a civilian status. In consideration of his contention in that regard, we shall confine ourselves to the two AWOL specifications alleged under Charge II of the "charge sheet" at petitioner's court-martial for violations of U.C.M.J., Art. 86 (10 U.S.C.A. § 886). The finding of guilt on Charge I, made against petitioner, was disaffirmed by the convening authority of petitioner's court-martial. "It is conceded (before this court) that there is considerable question of the courts-martial over the last offense (contained in the "charge sheet," Charge III) for desertion, for the reason that neither arrest, confinement, or charges had occurred for that offense prior to the terminal date of the petitioner's active duty." Resp.Memo Brief, p. 19. In light of that admission, we shall not sound the court-martial's jurisdiction as to Charge III. If that was the only charge under which petitioner was tried, found guilty, sentenced, and is now being detained in the Stockade at Fort Leonard Wood, we think we would be compelled to rule that the Army and a court-martial convened to try that charge had no jurisdiction over petitioner, and his conviction thereon is and was void. Cf. United States v. Mansbarger, 1955, 20 C.M.R. 449; In re Christian and Harris, 1956, 22 C.M.R. 780; Martin v. Young, D.C., 134 F.Supp. 204; Ex parte Wilson, D.C., 33 F.2d 214; Op. JAGAF/18.3 Nov. 1954.

In the posture of the instant case we need only consider the Army's juris-

diction to try petitioner by court-martial on Charge II, Specifications 1 & 2, made against him for AWOL's occurring on March 29, 1957, and May 16, 1957, prior to petitioner's return to a civilian status. If it appears that petitioner was subject to prosecution on that charge under the Uniform Code of Military Justice, *supra*, then, regardless of any other matters occurring at his court-martial trial, and sentence thereat, we would not be justified in discharging him from his present confinement, in this habeas corpus proceeding; because it is manifest that petitioner has not exhausted all military remedies available to him to ·have his court-martial proceeding and conviction on that charge reviewed under the Uniform Code of Military Justice. Gusik v. Schilder, 1950, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146. It is only after a military prisoner has exhausted military remedies available to him under that Code, to have a military decision reviewed, that the same is open to re-evaluation on due process of law considerations by a United States District Court. Burns v. Wilson, 1953, 346 U.S. 137, 73 S.Ct. 1045, 97 L. Ed. 1508.

As above established the record here shows that petitioner was informed of the charges on which he was tried at court-martial; that the same were sworn to by his Commanding Officer on August 18, 1957; and, that the convening authority referred same for trial to General Court-Martial September 10, 1957. However, the record made at petitioner's court-martial does not reveal any showing having been made as to jurisdiction vesting under the Uniform Code of Military Justice in respect to such charges prior to August 18, 1957. As above established, oral evidence was adduced at the hearing on the instant petition for a writ of habeas corpus to the effect that two specifications under Charge II, for AWOL, were made against petitioner, as to which petitioner was duly informed by his Commanding Officer on June 26, 1957, prior to petitioner's termination of "active duty"; that he was not thereafter returned to "active duty training" but

was ordered to remain on the Post until such charge could be duly processed. Thereafter, petitioner again went AWOL, on July 8, 1957. In light of those facts and under the Uniform Code of Military Justice, we think that jurisdiction attached in respect to Charge II, and the two specifications thereunder, preferred against petitioner. It is held that "jurisdiction having attached by commencement of action with a view to trial—as by apprehension, arrest, confinement, or filing of charges—the same continues for all purposes of trial, sentence and punishment," notwithstanding a subsequent change in status before final referral and trial by court-martial. Par. 11(d), Manual for Courts-Martial, United States, 1951; Reid v. Covert, 351 U.S. 487, 76 S.Ct. 880, 100 L.Ed. 1352; Carter v. McClaughry, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236; Lee v. Madigan, 9 Cir., 1957, 248 F.2d 783; United States ex rel. Mobley v. Handy, 5 Cir., 1949, 176 F.2d 491; Mosher v. Hunter, 10 Cir., 1944, 143 F.2d 745, certiorari denied 323 U.S. 800, 65 S.Ct. 552, 89 L.Ed. 638.

■ But, the question remains as to whether jurisdiction having so attached, can that matter now be established in this habeas corpus proceeding *aliunde* the record made at petitioner's court-martial? Department of Army Bulletin No. 9, dated June 8, 1951, issued pursuant to U.C.M.J., Article 66(f), provides in part as follows:

"F. *Matters outside record.*— Matters outside the record of trial will not be presented to or argued before a board of review except with respect to:

"1. A petition for new trial referred to a board under Article 73,

"2. A question of jurisdiction,

"3. Matters affecting the sanity of an accused tending to show that further inquiry as to his mental condition is warranted in the interest of justice,

"4. Matters as to which judicial notice may be taken in military law.

"When requested by the Judge Advocate General, a board of review may hear and report to him on, any matter outside the record in mitigation of the sentence, or otherwise in the interest of justice."

Under U.C.M.J., Art. 66(f) the Judge Advocates General are authorized to "prescribe * * * rules of procedure for * * * boards of review. * * *."

In Givens v. Zerbst, 255 U.S. 11, 41 S.Ct. 227, 229, 65 L.Ed. 475, it is held that the judgment of a court-martial is open to collateral attack for want of jurisdiction and to sustain such a judgment it must appear that the facts essential to jurisdiction existed when jurisdiction was exercised. In the course of that opinion the Supreme Court said:

"Considering that subject in the light stated, we think the court below was right in admitting, as it did, evidence to show the existence of a military status in the accused, since it did not change the court-martial record but simply met the collateral attack by showing that at the time of the trial the basis existed for the exertion by the court of the authority conferred upon it."

In consequence of Department of the Army Bulletin No. 9, supra, and Givens v. Zerbst, supra, the Military Boards of Review, and United States Court of Military Appeals, have ruled that in determining the issue of jurisdiction such reviewing authority may consider facts and matters pertinent to that subject which are derived from sources outside the record of courts-martial trials. See United States v. Rubenstein, 19 C.M.R. 709; United States v. Ferguson, 5 U.S. C.M.A. 68; 17 C.M.R. 68; United States v. Lanford, 6 U.S.C.M.A. 371, 20 C.M.R. 87.

In light of the foregoing, it here appears that the court-martial at which petitioner was tried and sentenced, had jurisdiction of at least Charge II, *supra*, made against petitioner thereat That being true, we have no power to review petitioner's conviction thereon, regardless of any other matters occurring at his court-martial. Gusik v. Schilder, supra; Thomas v. Davis, 10 Cir., 1957, 249 F.2d 232. The instant petition for writ of habeas corpus must be, and the same is hereby, dismissed. It is so ordered.