UNITED STATES, Appellee

v

LEE V. BLUE, Ship's Serviceman Third Class,
U. S. Navy, Appellant

18 USCMA 39, 39 CMR 39

No. 21,006

November 29, 1968

*Lieutenant Stephen W. Grafman*, JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Major William R. Eleazer*, USMC.

*Lieutenant H. L. Moore*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Colonel C. R. Larouche*, USMC, and *Lieutenant Steven A. Weidner*, JAGC, USNR.

## Opinion of the Court

QUINN, Chief Judge:

The accused was charged with larceny of over $1,000.00 from Ship's Store Number One aboard the U.S.S. VALLEY FORGE, but the special court-martial to which the charge was referred for trial found him guilty of larceny of only $300.00. On review, the general court-martial authority approved findings of guilty of the lesser offense of wrongful appropriation. This finding was consistent with admissions made by the accused in a pretrial statement and with the plea of guilty to wrongful appropriation in the amount of $300.00, which he entered at trial. On this appeal, however, the accused contends that an unsworn statement made by him during the sentence proceedings was inconsistent with his plea, and further inquiry into its providence should have been made. Manual

for Courts-Martial, United States, 1951, paragraphs 70*b* and 75; United States v Cleveland, 15 USCMA 121, 35 CMR 93.

The accused was designated operator of Ship's Store Number One. Before he assumed his duties, a physical inventory was made of all articles in the store. The accused certified the inventory. At the next regular inventory, a dollar shortage in excess of $1,000.00 was discovered. Ship's Servicemen "worked day and night" in an attempt to find the possible error, but did not succeed. Some evidence indicated that several acts of pilferage by other persons may have taken place in the interim between inventories. The matter was referred to the Office of Naval Intelligence for investigation. In the course of this investigation, the accused made a handwritten incriminating statement, which was admitted into evidence at the trial. As indicated more fully below, the accused confessed that he took "about" $300.00 from the cash receipts, but he denied responsibility for the balance of the shortage disclosed by the inventory. The court-martial apparently accepted this part of the accused's statement as true because it found him guilty of larceny of only $300.00, rather than the amount charged. The convening authority approved this finding, but, as mentioned earlier, the general court-martial authority reduced the findings of guilty from larceny to the lesser offense of wrongful appropriation.

In his own brief, the accused describes his unsworn statement to the court-martial as "rambling." Piecing together different parts of the discourse, he contends that this restatement demonstrates he "disclaim[ed] any criminal intent or guilty mind" and that the plea of guilty to wrongful appropriation of cash receipts was improvident. A comparison of the statement he made before trial with his unsworn comments at trial discloses no significant different and leaves us convinced the latter is not a disavowal of the plea of guilty. The logic of our conclusion is manifest in the following tabulation of related remarks from the two statements.

| *Pretrial Statement* | *Trial Statement* |
| --- | --- |
| 1. An "inventory . . . indicated about a thousand dollar shortage." | |
| 2. "Shortly after I was assigned ship store operator I got tight for some money, so I took some money from the sale of ship store items and I intended to repay this back before the next inventory. I did this three or four different times." | |
| 3. "I would guess that I took about three hundred dollars from the store, mostly in money, but I did get a few personal items that I did not pay for." | |
| 4. "When ship yard workers came into the store to work, I watched them as closely as I could, but I can only think that they must have taken a number of items from the ship store to account for the difference between the three hundred dollar[s] that I took and the thousand dollar shortage." | "[Trial counsel thinks] that I took all the money. But Mr. BENNETT, my division officer, . . . knew there was a camera down there that I wanted so I made arrangements with him so I could get the camera and pay so much each week and that's what I was doing. Mr. IRVIN, the ONI man, said that BENNETT didn't know anything about this. . . . I offered to make this [pretrial] statement on my own free will because Mr. |

5. "I recall . . . on a number of times some civilian ship yardworkers was working in the ship store. One time I did notice after they left the contents of three bottles of after shave lotion was missing."

BENNETT knew that I owed some money to the store, of which I had paid some back. It all came to a total of around $300.00."

"Just about every three days I had to close the store down in order to let the yard workers come and work. . . . I couldn't watch all of them at the same time. [Here the accused described an incident involving a "lot" of wallets and related the loss of after shave lotion.] The prosecution said that this was the only incident that I could remember, but I can remember quite a few others." [Here the accused related another incident involving watches.]

The accused's reference to an installment purchase of a camera, with the alleged knowledge and agreement of his division officer, does not negate his confession that on several occasions when he "got tight for some money" he just took it from the cash receipts. The number of occasions he admitted he reached into the cash clearly indicates these transactions were unrelated to the camera transaction. Similarly, there is no inconsistency between the accused's trial statement that he "owed" money to the store and his pretrial confession that he took the money at various times with the intention of returning all of it before the scheduled inventory. The acknowledgment is entirely consistent with the accused's declared intention to return the money he took from the cash receipts. Finally, the representation that the division officer knew the accused "owed some money to the store" does not amount to a contention that the officer knew and authorized withdrawals from the cash receipts when the accused was "tight for money"; and, equally important, it does not suggest in any way that the accused believed he could properly take money from the store whenever he needed it. Cf. United States v Thornton, 8 USCMA 446, 24 CMR 256. In fact, the accused's reference to the division commander's knowledge of the camera purchase suggests that that was the only incident of the accused's stewardship known to him before the inventory and discovery of the shortage. In sum, the accused's unsworn statement impresses us as a reassertion of his pretrial contention that he had not stolen the money, as the court-martial had determined by its verdict, but had merely wrongfully appropriated it, as he had admitted by his plea of guilty to the lesser offense. We perceive nothing in the record to "negate the wrongfulness of the act" to which the accused pleaded guilty, and of which he stands convicted. United States v McCoy, 5 US CMA 246, 248, 17 CMR 246; United States v Thompson, 13 USCMA 395, 32 CMR 395.

The decision of the board of review is affirmed.

Judge FERGUSON concurs.