Michael J. DIORIO, Petitioner,

v.

Brigadier General George H. McBRIDE, Installation Commander, Redstone Arsenal, Alabama; Lt. Col. Robert E. WESSON, the Commander of Troops, United States Army Missile Command; and Stanley Resor, Secretary of the Army, Respondents.

Civ. A. No. 69–649.

United States District Court
N. D. Alabama,
Northeastern Division.

Nov. 26, 1969.

Macon L. Weaver, Smith, Lammons & Weaver, Huntsville, Ala., for petitioner.

Wayman G. Sherrer, U. S. Atty., Northern Dist. of Alabama, Birmingham, Ala., Capt. John B. Mayes, Office of the Staff Judge Advocate, U. S. Army Missile Command, Redstone Arsenal, Ala., for respondents.

## OPINION OF THE COURT

ALLGOOD, District Judge.

On August 7, 1969, Pfc. Michael J. Diorio (petitioner herein), Sp/4 Michael A. Strauss, and Sp/4 Neil J. Blair, Jr., members of the 291st Military Police Company stationed at Redstone Arsenal, Alabama, while off duty and in civilian clothes, were seen standing near a parked automobile in a relatively secluded area of the Arsenal on Weeden Mountain. The servicemen were seen by three civilian employees of the United States Army at the Arsenal who were driving down the mountain.

The civilian employees stopped to see if the servicemen were in need of assistance. Pfc. Diorio, who appeared somewhat intoxicated though there was no smell of alcohol on his breath, told the civilians that his car had stalled and he asked them to give him a push. The civilians noticed when they stopped that one of the servicemen went over to the side of the road and bent down as if placing something under a rock.

After pushing Pfc. Diorio's car down the mountain, the civilians, being suspicious as to what the servicemen might have been doing, returned to the place where the car had allegedly stalled. There they found in the exact location where they had previously seen one of the servicemen kneeling, a corn cob pipe and a blue tobacco tin containing a vegetable compound.

The civilians gave the pipe, the vegetable compound (later identified as marihuana), and the registration number of Diorio's car to the Arsenal's police authorities. Pfc. Diorio and the other two servicemen were then called in for questioning. After a brief period of interrogation, the three servicemen were permitted to leave but were restricted to the Arsenal. On August 28, 1969, the three servicemen were charged with use and possession of marihuana.

On September 17, 1969, a court-martial was convened at the Arsenal and on that date Sp/4 Strauss' case was heard by a judge, defense counsel having waived a jury of officers and enlisted men. On September 18, 1969, Sp/4 Blair was tried by a court-martial. Both Blair and Strauss were found guilty of possession of marihuana and were given four-month suspended sentences and reduction in rank and pay.

On September 18, 1969, when Pfc. Diorio's case was called, he asked for and was granted a continuance to get civilian counsel.

On October 6, 1969, Pfc. Diorio filed a petition for a writ of habeas corpus with this court. A hearing on the petition was held October 8, 1969, at which time the court heard oral arguments. Counsel for the petitioner and for the Government were given until November 3, 1969, to submit written briefs of their arguments.

The question presented for this court's consideration by Pfc. Diorio's petition is whether the offense with which he is charged is an offense properly triable by a military court-martial under the guidelines set out in O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

In O'Callahan v. Parker, *supra,* the Court considered a petition for a writ of habeas corpus filed by a United States Army sergeant who was convicted by a court-martial of assaulting and attempting to rape a young girl in a hotel while on an evening pass from his Army post in Hawaii and while in civilian attire. The conviction was affirmed by an Army Board of Review and the United States Court of Military Appeals. O'Callahan then filed a petition for a writ of habeas corpus in the District Court, contending that the court-martial was without jurisdiction to try him for an offense having

no military significance, committed off post while on leave. The District Court denied relief and its decision was affirmed by the Court of Appeals. The Supreme Court granted certiorari and in a landmark decision reversed the Court of Appeals.

The Supreme Court in its opinion written by Mr. Justice Douglas examined in detail the historical evolution of our present military judicial system. It noted that the Constitution (Art. I, Sec. 8, Cl. 14, and the Fifth Amendment) recognizes that the special needs of the armed services necessitates having a system of military courts which are not bound by the procedural safeguards deemed essential in trials conducted by Article III courts. The Court in its opinion emphasizes, however, that military trials are primarily instruments of administering discipline rather than justice, and as a result the jurisdiction of military tribunals should not be expanded beyond that necessary to the continuance of an "effective national defense establishment." O'Callahan v. Parker, *supra,* at 265, 89 S.Ct. 1683.

The Court notes that in our Country there has been a particular aversion to having servicemen charged with civilian offenses tried by military courts. O'Callahan v. Parker, *supra,* at 268, 89 S.Ct. 1683. Despite this long standing aversion, before the O'Callahan v. Parker, *supra,* decision the military operated on the premise that if it were established that an accused were a member of the armed forces that this fact alone provided sufficient basis for a court-martial's jurisdiction. In O'Callahan v. Parker, *supra,* however, the Court states that even though it must be established that an accused is a member of the armed forces before he is subject to a court-martial's jurisdiction "that is merely the beginning of the inquiry, not its end." O'Callahan v. Parker, *supra,* at 267, 89 S.Ct., at 1688.

The Court concluded that for a court-martial to have jurisdiction over an accused serviceman that the alleged crime must be "service connected" lest those provisions of the constitution permitting a limited military judicial system "be expanded to deprive every member of the armed services of the benefits of an indictment by a grand jury and a trial by a jury of his peers." O'Callahan v. Parker, *supra,* at 273, 89 S.Ct., at 1691.

The Court did not definitively explain what crimes are encompassed by the "service connected" concept. On the contrary, the Court implied that a number of factors should be considered in determining whether a crime is "service connected." The Court specifically suggested or intimated that the following factors be given consideration: (1) whether the accused was on duty or off duty at the time of the offense; (2) whether there was a connection between the accused's military duties and the offense charged; (3) whether the offense occurred on post or off post; (4) whether the offense involved other servicemen; (5) whether the offense occurred in peacetime or war; (6) whether the offense involved the flouting of military authority; (7) whether the offense involved the security of a military post; (8) whether the offense involved the integrity of military property; and (9) whether the accused was wearing military or civilian clothes at the time the offense occurred. O'Callahan v. Parker, *supra,* at 259, 273, 274, 89 S.Ct. 1683.

Nowhere does the Court state that the aforementioned factors are exhaustive. It seems that the Court purposively avoided setting out any such boundaries.

The "service connected" concept while creating a degree of uncertainty in determining which offenses may appropriately be tried by a court-martial does, however, permit a desirable exercise of discretion in making the determination. Indeed, it would be difficult to anticipate and enumerate all factors which might have relevancy in determining whether there was a sufficient relationship between a particular offense and an identifiable military interest to justify the jurisdiction of a court-martial.

This court shares the Supreme Court's concern that the jurisdiction of military

courts, with the accompanying threat to the protection of individual rights of the accused, not be expanded beyond the military courts' proper domain. However, in the instant case, the facts surrounding the alleged offenses committed by Pfc. Diorio are entirely different from those presented in O'Callahan v. Parker, *supra*, and thus dictate a different result.

■ The facts of the O'Callahan v. Parker, *supra*, decision establish that the offense was committed off post, during off duty hours, and against a civilian victim. In the instant case, Pfc. Diorio was on a military post when the alleged offenses took place; he was in the company of and jointly charged with two other servicemen; he was driving an automobile which was registered on a military post identifiable by the military decal openly displayed on the bumper; he was not on official leave or pass status; and even though he was off duty, his job as a military policeman subjected him to recall to duty at any time. Finally, the petitioner allegedly committed offenses which undermined the authority of the post commander to establish and maintain order and discipline on the installation. Thus it is this court's conclusion that the offense with which petitioner Diorio is charged is "service connected" under the guidelines set out in O'Callahan v. Parker, *supra* (outlined in this opinion); and therefore, the offense with which Pfc. Diorio is charged is properly triable by a military court-martial.

It is interesting to observe, though the observation was by no means determinative of the court's conclusion in this case, that since petitioner Diorio will be tried by a special court-martial the maximum period of confinement he can receive for the offense with which he is charged is six months. Tit. 10, U.S.C.A. § 819. The Supreme Court has held that an accused charged with a "petty" offense which has a maximum penalty of six months confinement is not constitutionally entitled to indictment or trial by jury. Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966).

Thus in the instant case if the offense with which petitioner Diorio is charged can be characterized as "petty", two of the constitutional protections which O'Callahan v. Parker, *supra*, seeks to preserve for servicemen accused of non "service connected" crimes are not limited by petitioner's being subject to a military trial. See District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L. Ed. 843 (1937); Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

■ Even if the offense with which Pfc. Diorio is charged were not "service connected", it would be contrary to the rules set out by the Supreme Court for this court to grant his habeas corpus petition at this stage of the military proceedings. In an opinion handed down exactly two weeks after the landmark O'Callahan v. Parker, *supra*, decision, the Supreme Court reaffirmed the general rule that habeas corpus petitions from military prisoners should not be considered by federal courts until the accused has exhausted all available remedies within the military court system. Noyd v. Bond, 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969).

As the court stated in Gusik v. Schilder, 340 U.S. 128, 131–132, 71 S.Ct. 149, 95 L.Ed. 146 (1950), and again in Noyd v. Bond, *supra*, at 694, 89 S.Ct., at 152, this rule "is in no sense a suspension of the writ of habeas corpus. It is merely a deferment of resort to the writ until other corrective procedures are shown to be futile." The exhaustion of military remedies rule was established in the interests of judicial efficiency and in the interest of avoiding unnecessary friction between federal courts and military tribunals. Noyd v. Bond, *Id.*

In O'Callahan v. Parker, *supra*, there was no question of exhaustion of remedies because petitioner O'Callahan had taken advantage of all the remedies available to him in the military judicial system before filing his habeas corpus petition with the federal district court. If O'Callahan had not exhausted the mili-

tary remedies at the time he filed the habeas corpus petition, it is possible that the Court in light of its opinions in Gusik v. Schilder, *supra,* and Noyd v. Bond, *supra,* would have required him to do so before reviewing his petition.

However, at the time O'Callahan filed his petition the Supreme Court had not enunciated the standard military courts were to use in determining their jurisdiction. Therefore, the Court might have been persuaded by O'Callahan's circumstances to consider his petition even though his military remedies had not been exhausted.

O'Callahan v. Parker, *supra,* however, provided military courts with the standard to use in determining the offenses military courts may try. Since O'Callahan v. Parker, *supra,* both the military court of review and the military court of appeals have on several occasions reversed court-martial convictions because the particular offense tried was not "service connected" under the guidelines set out in O'Callahan v. Parker, *supra.* See U. S. v. Henderson, 18 U.S.C.M.A. 40 C.M.R. (1969); U. S. v. Riehle, 18 U.S.C.M.A. 40 C.M.R. (1969); U. S. v. Crapo, 18 U.S.C.M.A. 40 C.M.R. (1969); U. S. v. Shockley, 18 U.S.C.M.A. 40 C.M.R. (1969); U. S. v. Chandler, 18 U.S.C.M.A. 40 C.M.R. (1969); U. S. v. Borys, 18 U.S.C.M.A. 40 C.M.R. (1969).

■ The fact that the highest military courts stand ready to consider the very arguments Pfc. Diorio has presented to this court bolsters the justification of the application of the exhaustion of military remedies doctrine outlined in Noyd v. Bond, *supra,* and Gusik v. Schilder, *supra,* to his petition. The special court-martial which granted Pfc. Diorio a continuance to get a civilian attorney at the very least had jurisdiction to determine whether it had jurisdiction over the offense with which he was charged. See United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). If the special court-martial had decided that it

had jurisdiction and if it had tried and convicted Pfc. Diorio, he should then have appealed the conviction to the appropriate appellate body, which in the case of an appeal from a special court-martial would be the Judge Advocate General, before petitioning the federal district court.

Even though this court strongly supports the exhaustion of military remedies doctrine, the exigencies of the instant case convinced the court that the usual rationale, for requiring Pfc. Diorio to exhaust his military remedies before the court would comment on the merits of his petition, was not applicable. At the time Pfc. Diorio petitioned this court, no federal district court had ruled, since the O'Callahan v. Parker, *supra,* decision, on whether the use and possession of marihuana might possibly be service connected. On the other hand military courts, both trial and appellate, had ruled that use and possession of drugs was service connected under the O'Callahan v. Parker, *supra,* guidelines. See U. S. v. Castro, 18 U.S.C.M.A. 40 C.M.R. (1969).

Pfc. Diorio prior to his military induction was a member of the Chicago police force. If he is convicted by a special court-martial of use and possession of marihuana, his chances of being able to return to the police force will be seriously impaired even though a federal court might later hold that the court-martial did not have jurisdiction.

■ In view of the fact that the court held a hearing on Pfc. Diorio's petition, it would be a mere fiction to say that it has not considered the merits of the petition. Judicial efficiency, therefore, seemed best served by this court's stating its opinion on the merits of Pfc. Diorio's petition particularly in light of all the circumstances surrounding the petitioning. No friction has been generated between this court and the special court-martial by this court's commenting on the merits of the petition. Indeed, the military officials involved seemed to welcome an interpretation of the O'Callahan v. Parker, *supra,* guidelines. The Gov-

ernment did not even argue that Pfc. Diorio should have exhausted his military remedies.

If this court, however, had felt that Pfc. Diorio's habeas corpus petition should have been granted, it would have been reluctant to grant it before he had exhausted his military remedies.

It is this court's conclusion that the offense with which the petitioner is charged is "service connected." The court further concludes that petitioner is not now entitled to a writ of habeas corpus, and the case is remanded to the special court-martial for further proceedings.